[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 23, 2009
THOMAS K. KAHN
CLERK

No. 09-11276
Non-Argument Calendar

_____

D. C. Docket No. 08-00018-CR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRY L. HERRINGTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(October 23, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Darry L. Herrington appeals his convictions and sentences for armed bank robbery and brandishing a firearm during the commission of a bank robbery. Herrington argues that the district court (1) abused its discretion by denying his motion to withdraw his guilty plea based on his belief that he was not eligible for a career-offender enhancement, pursuant to U.S.S.G. § 4B1.1, (2) erred in finding that his prior offenses were proper predicate offenses for purposes of the § 4B1.1 enhancement, and (3) abused its discretion by imposing a substantively unreasonable sentence. For the reasons set forth below, we affirm.

## I.

Herrington was charged in a superseding indictment with two counts of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), ("Counts 1 and 3"); and two counts of brandishing a firearm during the commission of a bank robbery, in violation of 18 U.S.C. § 924(c), ("Counts 2 and 4"). Herrington pled guilty to Counts 3 and 4.

At the plea hearing, the court noted that Herrington's jury trial was scheduled to begin the next morning. Herrington was placed under oath and stated that he did not suffer from any mental illness or emotional distress, was not taking medication, and was not under the influence of alcohol or drugs. Herrington acknowledged that he had a right to a speedy and public jury trial, that the

2

government carried the burden of proving his guilt, and that he had the right to be represented by counsel at trial. Herrington understood that entering a guilty plea would waive these rights. Herrington also acknowledged that, by pleading guilty, he would waive his right to be present at his trial, confront the government's witnesses, call witnesses on his own behalf, remain silent at trial, and testify in his own behalf. The court explained that, by pleading guilty, Herrington would "give up any defenses [he] may have had, and in all likelihood, [he would] forever lose [his] right to complain on appeal about anything that may have happened in [his] case." Herrington initially stated that he did not understand this, but after conferring with counsel, stated that he did understand.

Herrington stated that he had met with counsel approximately 16 times and was satisfied with counsel. The court explained what the government would have to prove to convict Herrington of Counts 3 and 4. The court then explained that "[t]he maximum sentence by statute that the Court could impose for a violation of Count Three would be imprisonment for not more than twenty-five years . . . and five years supervised release." The court noted that

> the maximum sentence by statute that the Court could impose for Count Four would be a sentence of imprisonment not less than seven years in addition to that imposed as to Count Three. However, if this is your second or a subsequent conviction under § 924(c), then the term would be not less than twenty-five years

3

> imprisonment pursuant to 18 USC § 924(c)(1)(C), and a supervised release term of five years.

The court stated that it would consider the sentencing guidelines and the 18 U.S.C. § 3553 sentencing factors in determining Herrington's sentence. The court again pointed out that

> there is a mandatory minimum in connection with the 18 USC 924(c) charge, that is, a mandatory minimum of seven years for a conviction of Count Four in addition to whatever the sentence imposed is for Count Three. Additionally, if this is a second or subsequent 18 USC § 924(c) conviction for you, then the mandatory minimum is twenty-five years for a conviction of Count Four in addition to whatever you receive for Count Three.

It noted, "[a]ny guideline estimates that may have [been] made by your lawyer or the prosecution or the probation officer are just that. They are estimates, their best understanding of what your guideline range might be. But neither themselves nor the Court is bound by any estimate." Herrington stated that he was pleading guilty because he was, in fact, guilty of Counts 3 and 4 of the superseding indictment.

The court found that Herrington was not under the influence of medication, alcohol or drugs, understood the substance and meaning of the charges against him, and understood the consequences of entering a guilty plea. It determined that Herrington had been assisted by a competent attorney who met with him on 16 occasions and with whom he had discussed the plea agreement and sentencing

4

guidelines. Herrington affirmed that he was entering a guilty plea freely and voluntarily, and the court found that Herrington had not been coerced or influenced into pleading guilty.

William Kirkconnell, a special agent with the FBI stationed in Savannah, Georgia, testified as to the factual basis for the plea. Agent Kirkconnell stated that, on May 21, 2008, a man later identified as Herrington entered the Bank of America branch on St. Simons Island and handed to a teller a note demanding 100 and 50 dollar bills. The teller gave Herrington $2,350, and Herrington took the note and left the bank. Video surveillance from the bank depicted Herrington holding a silver handgun in his right hand while robbing the bank. Agent Kirkconnell stated that Herrington confessed to committing the robbery after waiving his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights. Herrington also admitted to robbing an Atlantic National Bank branch on April 10th, during which he brandished a silver firearm and stole $17,460.

Herrington told the court that he did not disagree with any of Agent Kirkconnell's statements and stated that he did, in fact, rob the Bank of America on St. Simons Island, while brandishing a handgun. The court determined that there was a strong factual basis for the plea and approved the plea agreement. Accordingly, it found Herrington guilty of Counts 3 and 4 of the superseding

5

indictment.

According to the presentence investigation report ("PSI"), on April 10, 2008, Herrington entered the Atlantic National Bank in Brunswick, Georgia, approached a teller, pulled a semiautomatic handgun from his pants, and placed it on the counter. Herrington told the teller "Give me your 100s, don't move, don't hit the alarm, I will blow your head off bitch." The teller gave Herrington the money, which Herrington placed in a bank bag before exiting the building. An internal audit conducted by Atlantic National Bank revealed that Herrington had stolen $17,460. On April 23, 2008, an arrest warrant was issued for Herrington.

At approximately 1:00 p.m. on May 21, 2008, Herrington approached a teller at the Bank of America on St. Simons Island, Georgia, and placed on the counter a note reading "This is a robbery, all 100s and 50s." The teller stated that Herrington was holding a handgun in his right hand and a money bag in his left hand. The teller gave Herrington money from her teller drawer, which Herrington placed in the money bag. Herrington then retrieved the note and exited the bank through the front door. An audit conducted by Bank of America revealed that Herrington had stolen $2,350.

On May 23, 2008, Herrington was arrested in Jacksonville, Florida. Herrington eventually admitted committing both robberies. The PSI noted that

Herrington cannot be attributed with his criminal conduct from the April 10, 2008, robbery at the Atlantic National Bank since such conduct is not incorporated in the offenses of conviction. However, the details of that robbery have been included above because Herrington's plea agreement contained his agreement to pay restitution as to that robbery in addition to restitution ordered as to the offenses of conviction.

The PSI initially assigned Herrington a base offense level of 20, pursuant to U.S.S.G. § 2B3.1. However, because Herrington had prior convictions for conspiracy to possess with intent to distribute cocaine base, using and carrying a firearm during the commission of a crime of violence, and second-degree robbery, Herrington was considered a career offender under § 4B1.1 and his base offense level was enhanced to 34. Herrington received a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a), resulting in a total offense level of 32. Because Herrington qualified as a career offender, he was subject to criminal history category VI. The guideline imprisonment range on Count 3, based on a total offense level of 32 and a criminal history category of VI, was 210 to 262 months. With respect to Count 4, Herrington was subject to a statutory minimum term of 25 years' (300 months') imprisonment, to run consecutively with any other sentence. Thus, pursuant to U.S.S.G. § 4B1.1(c)(2)(A), Herrington's guideline imprisonment range on both counts was 510 to 562 months.

The criminal history section of the PSI indicated that Herrington was

7

arrested on October 24, 1992, and charged, in the U.S. District Court for the Southern District of Indiana, with conspiracy, unlawful transportation in interstate commerce of stolen goods with a value of more than $5,000, and conspiracy to possess with intent to distribute more than 50 grams of cocaine base. These charges were based on Herrington's participation in planning and executing an October 14, 1992, jewelry store robbery in Indianapolis, Indiana. Herrington pled guilty to all 3 counts and, on April 14, 1993, was sentenced to a total of 121 months' imprisonment.

On February 8, 1995, Herrington was arrested and charged, in the U.S. District Court for the Southern District of California, with interference with commerce by robbery and using and carrying a firearm during the commission of a crime of violence. These charges arose from an August 12, 1992, jewelry store robbery in San Diego, California. On August 17, 1995, Herrington was sentenced to a total of 43 months' imprisonment for these offenses.

On July 1, 1997, Herrington was arrested and charged in San Bernadino, California Superior Court with second-degree robbery, based on his involvement in a July 24, 1992, jewelry store robbery in Fontana, California. On October 8, 1997, Herrington was sentenced to three years' imprisonment, to run concurrently with any other sentence. Neither party filed objections to the PSI.

Prior to sentencing, Herrington filed a motion to withdraw his guilty plea, asserting that he had been "incorrectly advised of possible sentence enhancements pursuant to [Section] 4B1.1." At the sentencing hearing, Herrington's counsel explained that he failed to advise Herrington, prior to entering the guilty plea, that he would be eligible for a career offender sentencing enhancement under U.S.S.G. § 4B1.1. Herrington himself then addressed the court, stating that the offenses upon which the career-offender enhancement was based were part of a single conspiracy.

The court found that Herrington did not have a fair and just reason for withdrawing his guilty plea. It noted that it was required to consider four factors in determining whether Herrington should be permitted to withdraw his guilty plea: (1) whether Herrington had close assistance of counsel, (2) whether Herrington's plea was knowing and voluntary, (3) whether judicial resources would be conserved by allowing withdrawal of the plea, and (4) whether the government would be prejudiced by the withdrawal. With respect to the first factor, the court noted that Herrington had stated under oath, at the plea hearing, that he had met with counsel 16 times, was satisfied with counsel, and had a close relationship with counsel. The court determined that Herrington's guilty plea was entered knowingly and voluntarily because (1) Herrington's reliance on counsel's mistaken

estimate of the length of sentence was insufficient to render the plea involuntary, (2) Herrington was informed at the plea hearing of the maximum possible sentences on Counts 3 and 4, and (3) Herrington evidenced an understanding at the plea hearing that any sentence estimate provided by his attorney was only an estimate. The court also noted that the conservation of judicial resources "does not favor a withdrawal in this case." With respect to the fourth factor, the government noted that it would be prejudiced by withdrawal of the guilty plea because "witnesses stood up in anticipation of the trial. The day before the trial, they stood down. Their memories have been affected by the time frame since the guilty plea." The government also noted that the robbery was an emotional experience for the witnesses, who would "have to relive all their trauma" if a trial was held. The court determined that "there [wa]s a viable argument that the Government would be prejudiced from withdrawal of the plea" and denied Herrington's motion to withdraw his guilty plea.

The court proceeded to sentencing and Herrington again asserted that his prior convictions were actually part of one overall conspiracy and asked the court to consider the offenses as one conviction. The probation officer noted that the prior convictions involved separate robberies and that the Indiana conviction involved the possession of crack cocaine. He noted that the convictions occurred

10

on different dates, in different jurisdictions, and in different states. The probation officer further noted that Herrington "is a career offender according to the guidelines. So regardless whether or not those are scored together or separately, we believe he is still a career offender." The court overruled Herrington's objection.

Herrington again stated that his prior convictions were part of an overall conspiracy because "the [Indiana] robbery itself was to pay for the cocaine." He explained "[t]hat case was an overall conspiracy from Indianapolis to San Diego, from San Diego to Fontana. Those are the cases that I have a problem with in my [PSI]. Those are the things that tie in because the cocaine – the robbery was to pay for the drugs." The probation officer noted that a PSI was prepared for Herrington's Indiana robbery case in January 1993, as well as his California robbery case in 1995. He noted that the PSI for the California case included criminal-history points for the prior Indiana robbery conviction and that Herrington did not argue at the time that the Indiana conduct was part of an overall conspiracy involving the California conduct. The court again overruled Herrington's objection.

The court adopted the factual findings and guideline calculations contained in the PSI, determining that Herrington was subject to a total offense level of 32, a

criminal history category of VI, a guideline imprisonment range of 510 to 562 months' imprisonment, 3 to 5 years' supervised release, a $17,500 to $175,000 fine, and $19,810 restitution. It noted that the statutory maximum penalty for Count 3 was 25 years' imprisonment, and the statutory minimum term of imprisonment as to Count 4 was 25 years, which must run consecutively to any other sentence.

Herrington asked the court to consider his age upon release from incarceration, noting that he was presently 40 years' old. He noted that he did not commit any offenses between 1992 and 2003 and that he was working for a law firm when he was arrested in 2003. Herrington acknowledged that he was incarcerated for several years between 1992 and 2003. Herrington himself addressed the court, stating that he had made some poor decisions, but that he had committed the robberies to support his family. He asked the court for leniency.

The court stated that it had listened to the arguments of Herrington and his attorney, reviewed the PSI, and considered all the factors set forth in 18 U.S.C. § 3553. The court sentenced Herrington to 510 months' imprisonment, consisting of 210 months on Count 3 and a consecutive term of 300 months on Count 4. The court stated that it sentenced Herrington to the low end of the guideline range because 510 months' imprisonment was "an adequate term of incarceration for the

12

conduct that was exhibited." It ordered restitution in the amount of $19,810 and ordered Herrington to serve 5 years' supervised release on each of Counts 3 and 4, to run concurrently. Neither party stated additional objections to the sentence.

## II.

*Motion to Withdraw Guilty Plea*

We review a district court's decision to deny a motion to withdraw a guilty plea for an abuse of discretion. United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). "The district court may be reversed only if its decision is arbitrary or unreasonable." United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988). After the district court has accepted a guilty plea and before sentencing, the defendant may withdraw a guilty plea if (1) the district court rejects the plea agreement, or (2) "the defendant can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(A)-(B).

In determining whether the defendant has met his burden of showing "a fair and just reason for requesting the withdrawal," a district court may consider the totality of the circumstances surrounding the plea, including the following factors: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to

13

withdraw his plea." Buckles, 843 F.2d at 472 (citation omitted). The district court is not required to find prejudice to the government before it can deny a defendant's motion to withdraw. Id. at 474. "There is a strong presumption that the statements made during the [plea] colloquy are true." Medlock, 12 F.3d at 187.

Here, in requesting to withdraw his guilty plea, the burden was on Herrington to establish a "fair and just reason" for the court to grant withdrawal. See Fed.R.Crim.P. 11(d)(2)(B). With respect to the first Buckles factor, the district court did not abuse its discretion in determining that Herrington had close assistance of counsel. At the plea hearing, Herrington stated that he met with counsel 16 times and was satisfied with counsel's performance, and the court specifically found that Herrington had been represented by a competent attorney. Herrington's argument that counsel failed to inform him that he could be subject to a career offender is a question of whether counsel's performance was deficient, rather than whether close assistance of counsel was available. Because Herrington was represented by counsel throughout the proceedings and stated at the plea colloquy that he was satisfied with counsel, Herrington failed to show that he was deprived of close assistance of counsel.

With respect to the second factor, Herrington argues that his plea was not knowing and voluntary because he was unaware that he could be subject to the

14

career-offender enhancement. However, at the plea colloquy, the court informed Herrington that any sentencing estimates made by counsel were simply estimates that were not binding on the court. Furthermore, the court informed Herrington on two occasions that he would face a mandatory minimum of 25 years' imprisonment on Count 4 if he had a prior § 924(c) conviction. The court also explained that it could impose a sentence of up to 25 years' imprisonment on Count 3. Thus, Herrington was on notice, at the change-of-plea hearing, that he could face 50 years' imprisonment if he pled guilty to Counts 3 and 4. Because the district court at the plea hearing informed Herrington of the maximum possible penalties he faced and the fact that the court was not bound by counsel's sentencing estimates, Herrington has failed to show that his plea was not entered knowingly and voluntarily. See United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001) (affirming the denial of the defendant's motion to withdraw his guilty plea based on the defendant's contention that he relied on his attorney's sentencing prediction, which failed to take into account defendant's career offender status, because the district court advised defendant during the plea colloquy that the statutory maximum sentence was life and that the court was not bound by counsel's predictions).

The district court also did not abuse its discretion in determining that judicial

resources would not be conserved by allowing Herrington to withdraw his guilty plea because withdrawal of the plea would have required the government to recall all witnesses, and the parties and court would have had to proceed to trial. Finally, the district court did not err in determining that the government would be prejudiced by allowing withdrawal of the guilty plea. The government explained that it would have to recall witnesses that it had previously instructed to "stand down" only one day before trial was scheduled. Moreover, the district court was permitted to deny Herrington's motion to withdraw even if it had found that the government would not be prejudiced by the withdrawal. See Buckles, 843 F.2d at 474. Accordingly, because Herrington failed to establish a fair and just reason for requesting the withdrawal of his guilty plea, the district court's decision to deny his motion was neither arbitrary nor unreasonable. See id. at 471.

*Career Offender Enhancement*

We review a district court's application and interpretation of the Sentencing Guidelines de novo and its findings of fact for clear error. United States v. Rhind, 289 F.3d 690, 693 (11th Cir. 2002). Specifically, we review a factual finding that prior convictions are unrelated under U.S.S.G. § 4A1.2 for clear error. United States v. Wilks, 464 F.3d 1240, 1243 (11th Cir. 2006). A defendant is considered a career offender under U.S.S.G. § 4B1.1 if:

16

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence of a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Section 4B1.2(c) states that "'two prior felony convictions' means . . . the sentences for at least two of the . . . felony convictions are counted separately under § 4A1.1(a), (b), or (c)," which list the number of points assigned to prior sentences. U.S.S.G. § 4B1.2(c). Section 4A1.2(a)(2) provides that

Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

U.S.S.G. § 4A1.2(a)(2) (2007) (emphasis added).

Herrington asserts that he does not have two prior felony convictions for crimes of violence because the offenses outlined in paragraphs 32-34 of the PSI should be considered one offense. A review of the PSI indicates that the sentences imposed for the offenses in paragraphs 32-34 were not separated by intervening arrests because the offenses were committed between July 24, 1992, and

17

October 14, 1992, and Herrington was first arrested on October 24, 1992.[1]

Therefore, the offenses are considered separate unless (A) the sentences resulted from offenses contained in the same charging instrument, or (B) the sentences were imposed on the same day. See U.S.S.G. § 4A1.2(a)(2). The offenses in these paragraphs were not contained in the same charging instrument because they were prosecuted in different jurisdictions – United States District Court for the Southern District of Indiana, United States District Court for the Southern District of California, and San Bernadino Superior Court. Furthermore, the sentences were not imposed on the same day. Herrington was sentenced in the Southern District of Indiana on April 14, 1993, in the Southern District of California on August 9, 1996, and in San Bernadino Superior Court on October 8, 1997. Thus, the district court correctly found that Herrington's prior convictions were separate offenses and that he, therefore, qualified for the career-offender enhancement.

Herrington also argues, for the first time on appeal, that he should have been sentenced under the pre-2007 Sentencing Guidelines. Because Herrington failed to raise this argument before the district court, plain-error review applies. See United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995) (noting that we "consider[] sentence objections raised for the first time on appeal under the plain

_____

[1] Although there were separate arrests for these three offenses, they were not "intervening arrests" by definition.

error doctrine"). "Under the plain error standard, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Smith, 459 F.3d 1276, 1283 (11th Cir. 2006). We will correct a plain error only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

The Sentencing Guidelines instruct courts to "use the Guidelines Manual in effect on the date that the defendant is sentenced" or, "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. §§ 1B1.11(a), (b)(1). Because Herrington was sentenced on March 2, 2009, the district court did not err, much less plainly err, in sentencing Herrington pursuant to the November 1, 2008, guidelines. Furthermore, even if the court had determined that it should use the Guidelines Manual in effect on the date that the offense of conviction was committed, Herrington would have been subject to the November 1, 2007, Guidelines Manual because the offense conduct occurred in April and May of 2008. In both the 2007 and 2008 Guidelines Manual, §§ 4B1.1(a) and § 4A1.2(a)(2) are identical. Compare U.S.S.G. §§ 4B1.1(a), 4A1.2(a)(2)(2007) with U.S.S.G. §§ 4B1.1(a),

19

4A1.2(a)(2)(2008).  Accordingly, the district court did not abuse its discretion in sentencing Herrington as a career offender.


*Reasonableness of the Sentence*

We review a defendant's sentence for reasonableness under an abuse-of-discretion standard.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by the party."  Gall v. United States, 552 U.S. 38, __, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007).  The § 3553(a) factors the court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)).  After considering the § 3553(a) factors, the court "must make an

individualized assessment based on the facts presented." Gall, 552 U.S. at __, 128 S.Ct. at 597. We have recognized that "there is a range of reasonable sentences from which the district court may choose." Talley, 431 F.3d at 788.

Herrington's sentence consisted of the statutory mandatory minimum 25 years' (300 months') imprisonment on Count 4 and 210 months' imprisonment on Count 3, which was at the low end of the applicable guideline range. Viewing the record as a whole, the district court did not abuse its discretion in sentencing Herrington at the low end of the guideline range with respect to Count 3. The district court stated that it had considered the parties' arguments, as well as the § 3553(a) sentencing factors in determining a reasonable sentence. Herrington's offense involved an armed robbery of a public bank, and his criminal history indicated that he had committed several similarly dangerous crimes in the past. Thus, the nature and circumstances of the offense, Herrington's history and characteristics, the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, the need for deterrence, and the need to protect the public all justify the imposition of a sentence within the guideline range. See Talley, 431 F.3d at 786; 18 U.S.C. § 3553(a). Furthermore, the district court was not required to consider Herrington's age in determining a reasonable sentence. See Talley, 431 F.3d at 786; 18 U.S.C. § 3553(a).

Accordingly, Herrington has failed to show that his sentence was substantively unreasonable and we affirm Herrington's convictions and sentences.

**AFFIRMED.**