# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41197

United States Court of Appeals
Fifth Circuit

**FILED**

June 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

HENRY KORVETT BAMS,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, SMITH, and GRAVES, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Henry Bams appeals his convictions of conspiracy to possess with intent to distribute cocaine and use of an interstate facility in aid of racketeering. He contends that certain evidence should have been suppressed and that there was insufficient evidence for conviction. He also raises various challenges to his sentence. Because we find no reversible error, we affirm.

No. 16-41197

I.

A.

Bams and Frederick Mitchell were stopped by Officer Dale Baggett in Nacogdoches County, Texas, for speeding. Bams was the driver, and when Baggett approached the vehicle, he detected a strong odor of marihuana and saw that Bams's eyes were bloodshot. Baggett asked Bams and Mitchell about their travel plans, and they gave conflicting answers. He asked Mitchell whether there was any contraband in the car, and Mitchell said no. Baggett then asked whether there was any luggage, and Mitchell said he had a blue duffel bag and Bams had an orange Nike bag, both of which were in the trunk. After a search of the vehicle, Baggett found the bags Mitchell had described and discovered five plastic bags of cash in them. The currency had been separated into stacks wrapped by rubber bands. Mitchell stated that the money was his but that he was unsure how much there was. A later count established $253,341.

Bams and Mitchell were arrested for money laundering, and the cash was seized. Several days later, the district attorney reached a settlement with Bams and Mitchell, whereby they agreed to forfeit $100,000 of the seized cash; the county returned the remaining currency to them. That returned money was ultimately deposited into an account owned by Bams.

Several weeks later, Bams and Mitchell were stopped by Officer Adam Pinner in Arkansas for making an unsafe lane change. Bams was driving the vehicle, which was registered to him, and Mitchell was the only passenger. When Pinner asked Bams for his license, he noticed that Bams's hands were shaking and that he appeared nervous. Pinner also saw that one of the rear quarter panels appeared to have been tampered with, that there was a single key in the ignition, and that there were energy drinks in the vehicle. Pinner

No. 16-41197

testified that those observations were consistent with drug trafficking. After receiving consent from Bams, Pinner searched the vehicle and found ten kilograms of cocaine concealed within two false compartments in the rear quarter panels.

B.

Bams and Mitchell were indicted for (1) conspiracy to possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846, and for (2) use of an interstate facility in aid of racketeering, in violation of 18 U.S.C. §§ 2 and 1952(a)(3). Bams moved to suppress evidence obtained from the Arkansas traffic stop, and the district court denied the motion. After a four-day jury trial, Bams was convicted of both counts.

The presentence report ("PSR") classified Bams as a career offender and thus calculated his offense level as 37 and his criminal-history category as VI, yielding a guideline range of 360 months to life. U.S. Sentencing Guidelines Manual ("U.S.S.G.") Ch. 5, Pt. A (Sentencing Table). The PSR recommended 360 months for the Section 846 conviction and 60 months for the Section 1952 conviction.[1] The district court accepted the PSR in its entirety but granted Bams's motion for a downward departure, sentencing Bams to 240 months on the first count and 60 months on the second, to run concurrently.

II.

Bams contends that the district court erred in denying his motion to suppress evidence obtained from the Arkansas stop. "In reviewing a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo."[2] "In reviewing findings

---

[1] The statutory maximum for a conviction under Section § 1952(a)(3) is five years.

[2] *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013).

3

No. 16-41197

of fact, we view the evidence in the light most favorable to the party prevailing below, which in this case is the Government." *Id.* When determining reasonable suspicion, "we must 'give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'"[3]

"We analyze the constitutionality of a traffic stop using the two-step inquiry set forth in *Terry v. Ohio*, 392 U.S. 1 (1968)." *Andres*, 703 F.3d at 832 (citation partially omitted). At the first step, "we determine whether the stop was justified at its inception." *Id.* "For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.* Reasonable suspicion can rest upon a mistake of law or fact if the mistake is objectively reasonable.[4] Assuming the stop was justified, we move to the second step, where we determine "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Id.* (quotation marks omitted). "A traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.* (quotation marks omitted).

Bams challenges the Arkansas stop on both prongs of *Terry*. Each of those challenges fails.

### A.

On the first prong, Bams maintains that Pinner did not have reasonable

---

[3] *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

[4] *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (first citing *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014); then citing *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)).

4

suspicion that Bams had engaged in any illegal activity.  The government counters that Pinner had reasonable suspicion to stop Bams because he had violated ARK. CODE ANN. § 27-51-306.  That statute provides, in relevant part, that "[t]he driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle."  According to Pinner, Bams passed a tractor-trailer on the left side of the road and returned to the right side when he was only fifty feet in front of the tractor-trailer, which Pinner believed was insufficient to be "safely clear" of the truck.  He based that belief on ARK. CODE ANN. § 27-51-305, which prohibits tractor-trailers from following within two hundred feet of another motor vehicle.  He testified that "if the violator vehicle had to come to a stop for some unknown reason, something in the traffic lanes or something, then the large truck would not have time to come to a stop and would rear-end the vehicle, which I see to be unsafe."

Bams does not dispute Pinner's description of the events.  Instead, he disagrees with Pinner's interpretation of the statute.

No Arkansas court has construed the meaning of "safely clear" in Section 27-51-306.  But even assuming that Pinner's interpretation were incorrect, his understanding was "objectively reasonable." *Heien*, 135 S. Ct. at 536.  Section 27-51-306 does not provide a precise number of feet.  That imprecision is presumably by design, since the "safe" distance may vary depending on the relative speeds of the vehicles, road conditions, and the like.  The statute appears to leave to the officer the task of deciding when a vehicle is "safely clear."  In any event, Pinner did not base his belief merely on his experience; he also considered Section 27-51-305, which does provide a specific distance: two hundred feet.  Given that Bams was overtaking a tractor-trailer, Pinner

No. 16-41197

could reasonably use Section 27-51-305 to inform the meaning of "safely clear."

Bams's counterarguments are unavailing. First, he points to other Arkansas statutes that require overtaken vehicles to yield to overtaking vehicles and for overtaking vehicles to return to the right lane within one hundred feet of a vehicle approaching from the opposite direction. *See* ARK. CODE ANN. §§ 27-51-306(2) and 307. But those provisions have no relevance to the meaning of "safely clear." Second, he suggests that the statute cannot mean what Pinner says because it would then "impose a burden on a lane-changing driver to be able to approximately estimate the distance between him and the car behind him." But that is *exactly* what Section 27-51-306 requires; drivers must determine whether there is sufficient distance to be "safely clear." Finally, Bams asserts that Pinner stopped him based on his race. But the "subjective motivations of police are deemed irrelevant as long as their conduct does not exceed what they are objectively authorized to do."[5]

B.

Bams additionally claims that the stop, even if initially justified, does not pass muster under the second prong of *Terry*. But his challenge is narrow. He concedes that he consented to a search and does not dispute that his consent was voluntary. Instead, he argues that, *before* his giving consent, Pinner had unreasonably prolonged his detention without reasonable suspicion, thus tainting his consent.

Bams is incorrect. He relies on *United States v. Dortch*, 199 F.3d 193 (5th Cir. 1999), *United States v. Santiago*, 310 F.3d 336 (5th Cir. 2002), and *United States v. Jenson*, 462 F.3d 399 (5th Cir. 2006), but those cases are

---

[5] *United States v. Gillyard*, 261 F.3d 506, 509 (5th Cir. 2001) (citing *Whren v. United States*, 517 U.S. 806, 814 (1996)).

No. 16-41197

inapposite. In each of them, we held that a detention had been unnecessarily prolonged because the officers had detained a vehicle *after* the computer checks were concluded—thus terminating the reasonable suspicion that had initially justified the traffic stop—and *before* additional reasonable suspicion arose.[6] Here, in contrast, Pinner had reasonable suspicion, *before* the computer check ended, that Bams was trafficking drugs. When he approached the vehicle, Pinner observed that (1) Bams's hands were shaking and he appeared nervous; (2) there was a single key in the ignition; (3) there were energy drinks in the vehicle; and (4) the driver's-side rear quarter panel appeared to have been tampered with.

Based on those observations, Pinner had reasonable suspicion that Bams and Mitchell were engaged in drug trafficking. The most important fact is the apparently modified quarter panel. We have expressly distinguished *Dortch* and *Santiago* on the basis that "in those cases there were no physical facts suggesting the presence of a hidden compartment." *United States v. Estrada*, 459 F.3d 627, 632 (5th Cir. 2006).[7] In addition, a person's nervousness at a traffic stop may contribute to an officer's reasonable suspicion. *See Brigham*, 382 F.3d at 508; *Jenson*, 462 F.3d at 408. Pinner also explained how drug traffickers often drive third-party vehicles and thus have only a single key. Finally, he described how traffickers use energy drinks to help them drive to their destination without stopping. Considering all of those observations

---

[6] *Dortch*, 199 F.3d at 199–200; *Santiago*, 310 F.3d at 342; *Jenson*, 462 F.3d at 406–08. *See United States v. Brigham*, 382 F.3d 500, 510 (5th Cir. 2004) (en banc) ("[*Dortch* and *Santiago*] are about timing and sequence: after the computer checks came up 'clean' there remained no reasonable suspicion of wrongdoing by the vehicle occupants. Continued questioning *thereafter* unconstitutionally prolonged the detentions.").

[7] *See also United States v. Chavez-Chavez*, 205 F.3d 145, 149 (5th Cir. 2000) (explaining that the appearance of a modified suspension supported the existence of reasonable suspicion that the driver was transporting illegal aliens).

No. 16-41197

together, Pinner had reasonable suspicion, before he finished the computer checks, that Bams was engaged in drug trafficking. Thus, Pinner did not unreasonably extend the detention, and Bams's consent was not tainted.

III.

Bams asserts that there was insufficient evidence to convict him of the drug conspiracy. A jury verdict is entitled to "great deference." *United States v. Gray*, 96 F.3d 769, 772 (5th Cir. 1996). "In a sufficiency of the evidence claim, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Rojas Alvarez*, 451 F.3d 320, 326 (5th Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We thus assume that the evidence offered by the government is true and must draw inferences in its favor. *Id.*

"To prove a drug conspiracy, the government must prove that (1) two or more persons, directly or indirectly, reached an agreement to possess with the intent to distribute a controlled substance; (2) the defendant knew of the agreement; (3) the defendant voluntarily participated in the agreement; and (4) the overall scope of the conspiracy involved the drug amount in the charged crime."[8] Bams challenges only the agreement element. "It is well-settled that circumstantial evidence may establish the existence of a conspiracy . . . ."[9] An agreement may be inferred from a "concert of action" or from "the development

---

[8] *United States v. Bowen*, 818 F.3d 179, 186 (5th Cir. 2016) (per curiam) (quotation marks omitted and alterations adopted).

[9] *United States v. Curtis*, 635 F.3d 704, 719 (5th Cir. 2011) (quotation marks omitted and alteration adopted); *see also United States v. Gallardo-Trapero*, 185 F.3d 307, 317 (5th Cir. 1999) ("[I]n meeting its burden, the government may rely on circumstantial evidence tying the defendants together in order to prove conspiracy.").

No. 16-41197

and collocation of circumstances."[10]

Based on the evidence, a rational jury could conclude that Bams reached an agreement to distribute drugs with Mitchell. They were stopped with over a quarter-million dollars in cash contained in sacks and wrapped in rubber bands. Special Agent Gorenc testified that those facts, along with the denominations of the cash and the size of the individual bundles, were consistent with drug trafficking. He also testified regarding travel patterns in the drug trade and how drugs generally flowed northward and proceeds traveled southbound, toward Mexico; Bams and Mitchell were driving south when they were stopped with the money. Also, Baggett found four cell phones in the car, and the jury heard testimony about how drug traffickers use multiple cell phones.

Finally, the government presented evidence of the following text-message exchange that occurred between Mitchell and an unknown person:

| Unknown person: | "38.5" |
| Mitchell: | "Need 2 ok 38.5" |
| Mitchell: | "Bring paper work in mor to you." |

Gorenc testified that $38,500 is a common price for a kilogram of cocaine and that "bring paper work" is lingo for bringing money. He interpreted the exchange to mean that the unknown person was quoting a price and that Mitchell was responding that he wanted two kilograms and would bring money in the morning (Gorenc understood "mor" to mean morning). Given the evidence, a rational jury could conclude that the quarter-million dollars was related to drug trafficking.

---

[10] *United States v. Romans*, 823 F.3d 299, 311 (5th Cir. 2016); *see also Bowen*, 818 F.3d at 186 ("A reasonable jury may infer the existence of a conspiracy from the presence, association, and concerted action of the defendant with others.") (quotation marks omitted); *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994) ("Presence and association with other members of a conspiracy, along with other evidence, may be relied upon to find a conspiracy.").

Bams disputes the origin of the seized money.  He claims that it was Mitchell's and came from a settlement after Mitchell was in a motorcycle accident.  But the jury was presented with numerous reasons to doubt that story.  First, Mitchell told Baggett that one of the bags with money in it belonged to Bams, and Mitchell was unable to say how much money there was in total.  Second, the money returned by the county was ultimately deposited into Bams's bank account.  Third, Mitchell's settlement occurred in the "mid-2000's."  A jury could reasonably doubt that Mitchell would still be carrying that much cash from a settlement that had occurred years before.  In sum, a rational jury could discredit Bams's and Mitchell's account of the money and instead conclude that the money was connected to drug trafficking.

The jury also heard testimony regarding the Arkansas stop, where Bams and Mitchell were found in a vehicle containing ten kilograms of cocaine.  The jury could reasonably infer, based on the quantity, that multiple people were involved in its transportation.  *United States v. Vasquez*, 677 F.3d 685, 694 & n.3 (5th Cir. 2012) (per curiam).  Pinner also found nine cell phones in the vehicle, and, as noted above, the jury heard testimony that drug traffickers often use multiple phones.  Finally, Gorenc testified, as described above, that drugs typically travel north from Mexico, and Bams and Mitchell were stopped in Arkansas heading north.

Considering the evidence together, a rational jury could conclude that Bams and Mitchell had agreed to distribute cocaine.  They were stopped with a large sum of cash that reasonably could relate to drug trafficking.  The returned portion ended up in Bams's account.  And then, several weeks later, *the same two people* were stopped again, this time with ten kilograms of cocaine.  That evidence is sufficient.

10

No. 16-41197

IV.

Bams challenges the sufficiency of the evidence with regard to his conviction under 18 U.S.C. § 1952. To prove a violation of Section 1952, in the context of this case, the government had to show "(1) that [Bams] traveled in interstate commerce; (2) with the specific intent to promote, manage, establish, or carry on . . . unlawful activity; and (3) that [Bams] committed a knowing and willful act in furtherance of that intent, subsequent to the act of travel in interstate commerce." *United States v. Tovar*, 719 F.3d 376, 389–90 (5th Cir. 2013).

Bams attacks sufficiency with respect to only the second and third elements. The analysis of those issues essentially merges with our discussion of sufficiency for the conspiracy charge. The indictment alleged that the "unlawful activity" that Bams was intending was the drug conspiracy. As explained above, there was sufficient evidence of the conspiracy, and a rational jury could infer intent based on the presence of the quarter-million dollars. With respect to the third element, the indictment alleged that the "act in furtherance" was the transportation of the money. Bams maintains that the money was from a licit source and so was not in furtherance of any conspiracy. But, as discussed above, a rational jury could infer that the money was related to the drug-trafficking conspiracy. Thus, it could convict Bams of the Section 1952 count.

V.

Bams challenges his classification as a career offender. Under U.S.S.G. § 4B1.1(a), "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a

11

controlled substance offense." Bams does not dispute that he was over eighteen at the time of the instant offense or that a conviction under Section 846 is a controlled-substance offense. Instead, he contends that he does not have two qualifying prior convictions.

The district court determined that Bams was a career offender based on two convictions: (1) a 1993 Wisconsin conviction of "Possession of a Controlled Substance With Intent to Deliver While Armed" and (2) a 1993 federal conviction of "Conspiracy to Distribute Cocaine" and "Using a Firearm in Relation to a Drug Trafficking Crime." Bams offers two reasons why those convictions are insufficient predicates. First, he claims that they are based on the same underlying conduct and so should not qualify as separate convictions. Second, he asserts that he was not convicted as an adult in the federal case.[11] Each of those theories fails.

## A.

For two convictions to serve as predicates for the career-offender enhancement, they must be "counted separately" under U.S.S.G. § 4A1.2,[12] which provides that

> [p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

---

[11] Bams also contends, for the first time in his reply brief, that his state conviction was not for a "controlled substance offense." Because he did not raise that argument in his opening brief, we do not consider it. *See United States v. Tuma*, 738 F.3d 681, 690–91 (5th Cir. 2013).

[12] *See* U.S.S.G. § 4B1.2(c) & cmt. n.3.

No. 16-41197

Bams concedes that his offenses were not charged in the same instrument and that he was not sentenced on the same day.  Thus, his convictions are counted separately under the plain terms of Section 4A1.2.[13]  Bams protests that "it was surely not the intent of [the Guidelines]" to permit a career-offender enhancement based on federal and state charges over the same underlying conduct.  Even assuming that he is right, we are not at liberty to ignore the clear text of the guidelines.[14]  Nor is the district court.  Thus, it did not err in classifying Bams's convictions as "separate" for the purpose of the career-offender enhancement.

## B.

To serve as a predicate for the career-offender enhancement, a conviction must be an adult conviction.  U.S.S.G. § 4B1.2 cmt. n. 1.  Bams contends that his 1993 federal conviction is not a proper adult conviction.  He does not dispute that he was indicted when he was an adult or that his conviction was entered when he was an adult.  Instead, he asserts that his federal conviction *should not* have been entered as an adult conviction.  He points to 18 U.S.C. § 5032, which requires the Attorney General to certify that certain circumstances exist before a juvenile can be prosecuted in a federal court.  He notes that such certification is a "jurisdictional requirement" and contends that, because there was no certification in his prior federal case, the conviction was improper.  He thus asserts that the district court erred in relying on the improper conviction.

---

[13] S*ee United States v. Herrington*, 350 F. App'x 363, 370 (11th Cir. 2009) (per curiam) (finding that convictions were properly counted separately because they were from different jurisdictions—and thus did not involve offenses charged in the same instrument—and because the sentences were imposed on different days).

[14] *United States v. Akins*, 746 F.3d 590, 611 (5th Cir. 2014) (declining to "overlook the clear language of U.S.S.G. § 4A1.2(a)(2)" in determining whether sentences were counted separately).

But "absent an allegation that the defendant was denied counsel in the prior proceeding, a district court sentencing a defendant may not entertain a collateral attack on a prior conviction used to enhance the sentence unless such an attack is otherwise recognized by law."[15]  Bams is not raising a claim that he was denied counsel, and he does not explain how his attack is "otherwise recognized by law."  The guidelines do not confer any right to attack a conviction collaterally,[16] and Bams does not point to any statute authorizing such an assault.  (Title 18 U.S.C. § 5032, the juvenile-certification statute, makes no such allowance.)  Accordingly, his collateral challenge to the 1993 federal conviction is barred.

Even assuming Bams could pursue this line of attack, he is wrong on the merits.  "[A]fter he turns 18, a defendant may be tried for a conspiracy which temporally overlaps his eighteenth birthday—if the government can show that the defendant ratified his involvement in the conspiracy after reaching majority."[17]  "Ratification in this context simply means that a defendant 'continues to participate in an ongoing conspiracy after his 18th birthday.'"[18]  When he ratifies his involvement, Section 5032 is inapplicable.[19]

The district court concluded that Bams's 1993 federal conviction included criminal conduct that occurred after his eighteenth birthday, and the

---

[15] *United States v. Longstreet*, 603 F.3d 273, 277 (5th Cir. 2010); *see also Custis v. United States*, 511 U.S. 485, 495–97 (1994); *United States v. Villafana*, 577 F. App'x 248, 252 (5th Cir. 2014) (per curiam).

[16] U.S.S.G. § 4A1.2 cmt. n.6.

[17] *United States v. Guerrero*, 768 F.3d 351, 361–62 (5th Cir. 2014) (quoting *United States v. Tolliver*, 61 F.3d 1189, 1200 (5th Cir. 1995) (unpublished), *vacated on other grounds*, *Moore v. United States*, 519 U.S. 802 (1996)).  Because *Tolliver* was issued before January 1, 1996, it is precedential.  *See* 5TH CIR. R. 47.5.3.

[18] *Id.* at 362 (quoting *United States v. Peters*, 283 F.3d 300, 309 (5th Cir. 2002)) (alteration adopted).

[19] *See id.* at 361–62.

## No. 16-41197

record documents support that conclusion. Bams turned eighteen in December 1991, yet the federal indictment alleged that Bams engaged in the conspiracy "from on or about January 1, 1989 through on or about October 1, 1992." In accord with that timeline, the federal judgment states that the offense concluded on October 1, 1992. Thus, even if Bams could attack his prior conviction, the district court did not err in finding that it was an adult conviction.

## VI.

Bams raises several other challenges to his sentence. Specifically, he contends that the district court erred (1) by finding that Bams intended to purchase cocaine with the money discovered in the Nacogdoches County stop, thus leading to a base offense level that was two points higher; (2) by applying a two-point enhancement based on its finding that Bams was an "organizer, leader, manager, or supervisor"; and (3) by adding two criminal-history points because Bams committed the instant offense while on supervised release.

But even if Bams were correct on all of those points, his guidelines range would not have changed. Because he is a career offender, the guidelines mandated a total offense level of 37 and a criminal-history category of VI. *See* U.S.S.G. § 4B1.1(b). That is the highest criminal-history category and a higher total offense level than the district court initially reached even with the supposedly erroneous base level and enhancement. Thus, even if the court committed all the errors Bams describes, it still calculated the correct range because of his career-offender status. So any error was harmless.[20]

The judgment of conviction and sentence is AFFIRMED.

---

[20] *See, e.g., United States v. Majors*, 328 F.3d 791, 797 (5th Cir. 2003) (per curiam); *United States v. Harrison*, 246 F. App'x 861, 862 (5th Cir. 2007) (per curiam); *United States v. Hawkins*, 142 F. App'x 812, 814 (5th Cir. 2005) (per curiam); *United States v. Hale*, 176 F.3d 480 (5th Cir. 1999) (per curiam) (table).

No. 16-41197

E. GRADY JOLLY, specially concurring:

I concur.  Although the Guidelines approve designating an individual a career offender based on a singular criminal act, as occurred here, it stretches credulity, at least for me, to use such a basis for the appellation "career offender."