# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 17, 2022

Lyle W. Cayce
Clerk

No. 20-20258

United States of America,

*Plaintiff—Appellee*,

*versus*

Berenice Del Angel,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-604

Before King, Jones, and Duncan, *Circuit Judges*.

Per Curiam:*

Berenice Del Angel was convicted in a bench trial on stipulated facts of possession with intent to distribute one kilogram or more of a substance containing a detectable amount of heroin. On appeal, Del Angel challenges the district court's denial of her motion to suppress evidence, arguing that the traffic stop resulting in her arrest was unconstitutionally prolonged. We

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20258

AFFIRM the denial of her motion to suppress but REMAND to correct an error in the district court's judgment.

## I. Background

On July 29, 2018, Richmond Police Officer Larry Ganey observed Berenice Del Angel's car following another vehicle too closely and traveling over the speed limit while on a major highway, so Officer Ganey initiated a traffic stop. *See* Tex. Transp. Code §§ 545.351, 545.062(a). The traffic stop was recorded by Officer Ganey's dash camera. Officer Ganey initiated the stop near a highway exit so that there was sufficient shoulder to make the stop safely.

The dashcam video shows that, after salutations to the car's occupants, Officer Ganey's first question to Del Angel was whether she speaks English. Then, within a minute of stopping the vehicle in a safe location, Officer Ganey asked Del Angel to step out of the vehicle and called Officer Carlos Arredondo to serve as an English-Spanish translator. He told Officer Arredondo that he was "not gonna write her a ticket or anything." At Officer Ganey's request, Officer Arredondo asked Del Angel a variety of basic questions, including where they were headed, where they were coming from, whether she had previous arrests, and whether there was contraband in the vehicle. While Officer Arredondo was on the phone with Del Angel, Officer Ganey spoke with the other occupants of the car, who were Del Angel's four children.

At one point, Officer Ganey's phone was no longer connected to Officer Arredondo, so Officer Ganey had to call him back. During that time, while waiting for the phone to connect again—three and a half minutes after asking Del Angel to step out of the car—Officer Ganey asked her whether she had a driver's license, and she revealed that she did not. She said she had an ID card, so he asked her to retrieve it. Once re-connected, Officer

No. 20-20258

Arredondo, at Officer Ganey's request, asked for consent to search the car, which Del Angel provided.

Officer Ganey searched the vehicle for nearly twenty-five minutes. During the search, Officer Ganey received the requested report on Del Angel's Texas ID number and asked for her criminal history. Five minutes later, dispatch reported Del Angel had no outstanding warrants but had been arrested for theft. On the driver side, Officer Ganey found a "strong odor air freshener" and loose panels that "had been off recently or off and on quite a bit." In the trunk, he "noticed that there was some recent work or something that had been done" to the spare tire well. On the passenger side, Officer Ganey believed "there was a lot of tooling around the glove box" because "[a] lot of the panels were loose." After twenty minutes of searching, Officer Ganey called to report what he believed was a hidden compartment because of "wood screws in the dash" but that he could not "take the dash apart any further." Officer Ganey detained Del Angel in the back of his patrol car. Ten minutes later, he found a hidden compartment in the trunk with six one-kilogram bundles, four of which contained heroin.

Del Angel was indicted on one count of possession with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Del Angel moved to suppress evidence, and the government opposed. At a suppression hearing, the district court heard testimony from two witnesses—law enforcement officers Larry Ganey, who conducted the stop, and Carlos Arredondo, who translated Officer Ganey's questions to Spanish for Del Angel over the phone. The district court also considered a 17-minute portion of the dashcam video of the stop. The district court denied the motion to suppress because "the stop was lawful, the stop was not . . . unreasonably prolonged," and "the defendant validly consented to a search of the vehicle."

No. 20-20258

Del Angel was subsequently convicted in a bench trial. The district court sentenced her to 121 months of imprisonment followed by five years of supervised release. Del Angel timely appeals, challenging the denial of her motion to suppress evidence.

## II. Standard of Review

Reviewing the denial of a motion to suppress, this court applies de novo review to the district court's legal conclusions and reviews factual findings for clear error. *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). The suppression ruling may be affirmed "on any basis established by the record," *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (quoting *United States v. Ibarra–Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999)), and "should be upheld if there is any reasonable view of the evidence to support it," *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)) (internal quotation marks omitted). The evidence is viewed in the light most favorable to the prevailing party, here the government. *See United States v. Glenn*, 931 F.3d 424, 428 (5th Cir.), *cert. denied*, 140 S. Ct. 563 (2019).

## III. Discussion

Del Angel argues, first, that because Officer Ganey's mission ended at the moment he told Officer Arredondo that he would not give Del Angel a ticket for the initial infractions, any detention after that moment was a violation of her rights under the Fourth Amendment. Second, Del Angel argues that, because the mission ended, her later consent was tainted by the earlier Fourth Amendment violation. We address these arguments in turn, and then address the clerical error in the district court's judgment.

4

No. 20-20258

## A.

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). Under Supreme Court precedent and our own precedent, "routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation[,]" are treated as *Terry* stops. *Id.* "[T]he legality of [such] investigatory stops is tested in two parts." *Id.* First, we "examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.*; *see Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). Del Angel's appeal challenges only the second prong: the reasonableness of Officer Ganey's actions subsequent to the initial stop. Del Angel points to *Rodriguez v. United States*, 575 U.S. 348, 354 (2015), to stand for the proposition that an officer unlawfully prolongs a traffic stop when he continues to detain someone after deciding not to issue a ticket for the traffic violations. But this argument is contrary to not only the general principles of Fourth Amendment reasonableness analysis but also the explicit language in *Rodriguez*.

The "touchstone of the Fourth Amendment is reasonableness," *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), and reasonableness is measured "in objective terms by examining the totality of the circumstances. . . . eschew[ing] bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). What Del Angel argues for is inconsistent with Fourth Amendment reasonableness analysis for two reasons: by introducing both subjective intent as well as a bright-line rule into the analysis.

First, Del Angel implicitly asks us to introduce an officer's subjective beliefs into the objective reasonableness analysis. She does so by founding her

5

No. 20-20258

challenge solely on the statement from Officer Ganey to Officer Arredondo (in English)[1] that Officer Ganey did not intend to issue a ticket for the initial traffic violations. *Cf. United States v. Bams*, 858 F.3d 937, 943 (5th Cir. 2017) (noting that the "subjective motivations of police are deemed irrelevant as long as their conduct does not exceed what they are objectively authorized to do" while analyzing prong one of *Terry* (quoting *United States v. Gillyard*, 261 F.3d 506, 509 (5th Cir. 2001))). That statement represents Officer Ganey's *subjective* intentions to exercise discretion and not issue a ticket during the stop. The fact that he subjectively thought, or even articulated, an intent not to ticket her is irrelevant here.

Instead, we must consider only the objective evidence of reasonableness during the stop given the totality of the circumstances. *Robinette*, 519 U.S. at 39. In conducting that analysis, "[c]ourts . . . inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506. Contrary to Del Angel's assertions, *Rodriguez* teaches that "[l]ike a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop *and attend to related safety concerns*." 575 U.S. at 354 (emphasis added) (citations omitted) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). And elaborating on what the "related safety concerns" might be, the Court continued:

> *Beyond* determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the

---

[1] The record offers no direct evidence that either officer told Del Angel that she would not be receiving a ticket for the initial infractions of speeding and following too close. It only shows that, at most, Officer Ganey told Officer Arredondo that he did not intend to issue a ticket for those violations.

> driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Id.* at 355 (emphasis added) (citations omitted) (quoting *Caballes*, 543 U.S. at 408).

Each and every action Officer Ganey took comported with that mission. After stopping Del Angel for committing traffic violations, he realized that Del Angel did not speak English, so he called a translator to ask her the routine questions often associated with traffic stops. He kept her stopped for three-and-a-half minutes while reaching the translator and resolving minor technical difficulties related to that process. He then learned that Del Angel did not have a driver's license, which in and of itself provided independent probable cause to detain her for longer, and even to arrest her. *See Snyder v. State*, 629 S.W.2d 930, 934 (Tex. Crim. App. 1982) (en banc); *see also Dew v. State*, 214 S.W.3d 459, 462 (Tex. App.—Eastland 2005, no pet.) ("Because appellant committed a misdemeanor by driving without a driver's license, [the officer] had probable cause to arrest."). Looking to the totality of the circumstances, nothing in that chain of events was objectively unreasonable. To hold otherwise—that an officer's single action of stating that he did not intend to issue a ticket for the initial infraction—would create the exact type of bright-line rule that we have consistently and resolutely eschewed. *Robinette*, 519 U.S. at 39.

7

No. 20-20258

Furthermore, in her appellate brief Del Angel analogizes the facts of this case to cases from our court and the Tenth Circuit[2] arguing that an officer's decision not to issue a ticket for initial traffic violations (as occurred here) is akin to when an officer learns that a "driver *had not committed* the suspected traffic violation that had justified the initial stop." The factual distinction between the present case and these cases is self-evident—in those cases the constitutional grounds for the stop dissipated when the officer realized that the suspected, illegal act *had not occurred*, meaning that the officers in those cases did not have a choice whether to issue a ticket. *See, e.g.*, *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994) ("Trooper Avery stopped Mr. McSwain for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker. Once Trooper Avery approached the vehicle on foot and observed that the temporary sticker was valid and had not expired, the purpose of the stop was satisfied.").[3] That is entirely different than the situation here, where Officer Ganey explicitly *did* have a choice, and made that choice by not issuing a ticket (as was within his discretion). Accordingly, the district court did not err in finding that the stop lawfully continued beyond Officer Ganey's decision not to issue a ticket for the initial infractions.

---

[2] *See, e.g.*, *United States v. Valadez*, 267 F.3d 395, 396 (5th Cir. 2001) (deciding a case where the initial stop was premised on the degree of window tinting and the expiration of a registration sticker, which were found to be legal and valid, respectively).

[3] Del Angel's other references to our precedent strain credibility. Pointing to an en banc decision of our court in *United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004), Del Angel argues that Officer Ganey had nothing "to investigate related to the stop's justification because he had already decided not to issue a ticket." In *Brigham*, the officer (like here) stopped a car for following too closely behind another vehicle. *Id.* at 504. There, our court reiterated that running a computer check on both "a driver's license and vehicle registration . . . during a traffic stop" are "inquiries [that] are *within* the scope of investigation attendant to the traffic stop." *Id.* at 508 (emphasis added).

No. 20-20258

## B.

Next, Del Angel argues that her consent to search the vehicle was not an independent act of free will, and as such, it did not dissipate the taint of the prior Fourth Amendment violation. *See United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993) ("Consent to search may, but does not necessarily, dissipate the taint of a fourth amendment violation."). This argument, of course, relies on the premise that there in fact was a Fourth Amendment violation. Since we find that premise false, there was no violation that tainted Del Angel's consent. Accordingly, the district court did not err.

## C.

The parties agree that the district court's judgment contains a clerical error: it indicates that Del Angel pleaded guilty, but in reality she had a bench trial. "[T]he court may at any time correct a clerical error in a judgment." Fed. R. Crim. P. 36. Rule 36 is the appropriate vehicle to correct errors in the written judgment that do not substantively alter the orally announced sentence. *United States v. Spencer*, 513 F.3d 490, 491-92 (5th Cir. 2008). Our court has remanded a case to the district court to correct exactly the same error. *United States v. Garcia*, 604 F.3d 186, 191 (5th Cir. 2010) ("Garcia pleaded not guilty, and his guilt was determined by the court after a bench trial, but the judgment erroneously states that he pleaded guilty. On remand, the district court must correct the error."). We do the same today.

## IV. Conclusion

For the foregoing reasons we AFFIRM the district court's denial of Del Angel's motion to suppress and REMAND to the district court to correct the error in the judgment identified by the parties.

9