# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 5, 2021

Lyle W. Cayce
Clerk

No. 19-10842

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BRIAN MATTHEW MORTON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-17-1

Before JOLLY, SOUTHWICK, and WILSON, *Circuit Judges*.

E. GRADY JOLLY, *Circuit Judge*:

In this appeal, we are asked to determine whether the good faith exception to the Fourth Amendment's exclusionary rule allows officers to search the photographs on a defendant's cellphones for evidence of drug possession, when the affidavits supporting the search warrants were based only on evidence of personal drug possession and an officer's generalized allegations about the behavior of drug traffickers—not drug users. We hold that the officers' affidavits do not provide probable cause to search the photographs stored on the defendant's cellphones; and further, we hold that the good faith exception does not apply because the officers' reliance on the

No. 19-10842

defective warrants was objectively unreasonable.  And while respecting the "great deference" that the presiding judge is owed, we further hold that he did not have a substantial basis for his probable cause determination with regard to the photographs.  We thus conclude that the digital images found on Morton's cellphones are inadmissible, and his conviction is therefore VACATED.    Accordingly,  the  case  is  REMANDED  for  further proceedings not inconsistent with this opinion.

## I.

Brian Matthew Morton was stopped for speeding near Palo Pinto, Texas.  After the officers smelled marijuana, he gave consent to search his van.  Officers found sixteen ecstasy pills, one small bag of marijuana, and a glass pipe.  When, however, they discovered children's school supplies, a lollipop, 14 sex toys, and 100 pairs of women's underwear in the vehicle, they became more concerned that Morton might be a pedophile.  After arresting Morton for drug possession, one of the officers, Texas Department of Public Safety (DPS) Trooper Burt Blue, applied for warrants to search Morton's three cellphones that were found in the van.  Trooper Blue's affidavits[1] for the search warrants mentioned no concerns about child exploitation; instead, the warrants purported to seek more evidence of Morton's criminal drug activity based on Trooper Blue's training and experience—fourteen years in

---

[1] The affidavits and warrants were identical to each other except for naming different cellphones to be searched.  The paragraph of the affidavits describing the objects of the search reads:

> It is the belief of affiant that suspected party was in possession of and is concealing in [the cellphones] . . . [e]vidence of the offense of Possession of [ecstasy], possession of marijuana and other criminal activity; to wit telephone numbers, address books; call logs, contacts, recently called numbers, recently received calls; recently missed calls; text messages (both SMS messages and MMS messages); *photographs*, *digital images*, *or multimedia files in furtherance of narcotics trafficking or possession*.

2

law enforcement and eight years as a "DRE-Drug Recognition Expert"—as well as the drugs found in Morton's possession and his admission that the drugs were in fact marijuana and ecstasy.

Relying on these affidavits, a judge issued warrants to search Morton's phones. While searching the phones' photographs, Trooper Blue and another officer came across sexually explicit images of children. The officers then sought and received another set of warrants to further search the phones for child pornography, ultimately finding 19,270 images of sexually exploited minors. The government then indicted Morton for a violation of 18 U.S.C. § 2252(a)(2) for the child pornography found on his three cellphones. The subject of drugs had vaporized.

In pretrial proceedings, Morton moved to suppress this pornographic evidence. He argued that the affidavits in support of the first set of warrants failed to establish probable cause to search for his additional criminal drug activity. The government responded by stating that the warrants were supported by probable cause and, if not, then the good faith exception to the exclusionary rule—first announced by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984)—should apply. The district court ruled in favor of the government, and Morton later pled guilty to the child pornography charge while reserving his right to appeal the district court's suppression decision. He was sentenced to nine years in prison, and this appeal of the suppression ruling followed.

## II.

On appeal, when examining a district court's ruling on a motion to suppress, we review questions of law de novo and accept factual findings unless they are clearly erroneous or influenced by an incorrect view of the law. *United States v. Gentry*, 941 F.3d 767, 779 (5th Cir. 2019); *United States v. Fulton*, 928 F.3d 429, 434 (5th Cir. 2019). We view the evidence in the

light most favorable to the prevailing party. *United States v. Ganzer*, 922 F.3d 579, 583 (5th Cir. 2019).   In reviewing a district court's denial of a suppression motion for evidence obtained pursuant to a search warrant, our precedent usually applies a two-step test. *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010).  First, we decide whether the good faith exception should apply.  *Id.*  If the good faith exception applies, then no further inquiry is required.  *Id.*  If the good faith exception does not apply, we proceed to a second step of analysis, in which we review whether the issuing judge had a substantial basis for determining that probable cause existed.  *Id.*

The good faith exception to the suppression of evidence obtained in violation of the Fourth Amendment arises when an officer's reliance on a defective search warrant is "objectively reasonable." *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006).  In such a case, the evidence obtained from the search "will not be excluded."  *Id.*  This court has decided that the good faith exception applies to most searches undertaken pursuant to a warrant unless one of the four situations enumerated in *Leon* removes the warrant from the exception's protection.   *Leon*, 468 U.S. at 923; s*ee Franks v. Delaware*, 438 U.S. 154, 171 (1978).  Only one of these "exceptions to the good faith exception" is relevant here: Morton alleges that the warrant "so lack[ed] indicia of probable cause" that the officers' reliance on it was "entirely unreasonable." *Leon*, 468 U.S. at 923.

To determine if there were indicia of probable cause, the reviewing court will usually be required to look at the affidavit supporting the warrant, but, even so, all of the circumstances surrounding the warrant's issuance may be considered. *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003); *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994).  Affidavits must raise a "fair probability" or a "substantial chance" that criminal evidence will be

found in the place to be searched for there to be probable cause. *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009) (cleaned up).

Here, as suggested by this court's precedent, we turn to Trooper Blue's affidavits supporting the search warrants. The affidavits seek approval to search Morton's contacts, call logs, text messages, and photographs for evidence of his drug possession crimes. As the government properly conceded at oral argument,[2] separate probable cause is required to search each of the categories of information found on the cellphones. Although "[t]reating a cell phone as a container . . . is a bit strained," the Supreme Court has explained that cellphones do "collect[] in one place many distinct types of information." *Riley v. California*, 573 U.S. 373, 394, 397 (2014). And the Court's opinion in *Riley* went to great lengths to explain the range of possible types of information contained on cellphones.[3]

*Riley* made clear that these distinct types of information, often stored in different components of the phone, should be analyzed separately. This requirement is imposed because "a cell phone's capacity allows even just one

---

[2] Oral Argument at 27:28, United States v. Morton, No. 19-10842, http://www.ca5.uscourts.gov/OralArgRecordings/19/19-10842_10-5-2020.mp3:

> The Court: Do you say you're entitled to everything inside that phone so long as you can look at anything inside the phone?
>
> The Government: No, your Honor.
>
> The Court: Or do you need probable cause for each individual sort of category of information that could be found there?
>
> The Government: That's correct.

[3] *See id.* at 393 (emphasizing that the term "cellphone" is "misleading shorthand" because cellphones are in fact minicomputers that also can serve as "cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers"); *id.* at 394 (noting that "[e]ven the most basic phones" might hold photographs, messages, a calendar, a phone book, "and so on"); *id.* at 396 (describing all of the possible apps as a "range of tools for managing detailed information").

type of information to convey far more than previously possible." *Id.* at 394. Just by looking at one category of information—for example, "a thousand photographs labeled with dates, locations, and descriptions" or "a record of all [a defendant's] communications . . . as would routinely be kept on a phone"— "the sum of an individual's private life can be reconstructed."[4] *Id.* at 394–95. In short, *Riley* rejected the premise that permitting a search of *all* content on a cellphone is "materially indistinguishable" from other types of searches. *Id.* at 393. Absent unusual circumstances, probable cause is required to search each category of content. *Id.* at 395 (stating that "certain types of data" on cellphones are "qualitatively different" from other types); *id.* at 400 (analyzing data from a phone's call log feature separately); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (analyzing data from a phone's cell tower location signals separately).

This distinction dovetails with the Fourth Amendment's imperative that the "place to be searched" be "particularly describ[ed]." U.S. CONST. amend. IV.; *cf.*, *e.g.*, *United States v. Beaumont*, 972 F.2d 553, 560 (5th Cir. 1992) ("General warrants [which lack particularity] have long been abhorred in the jurisprudence of both England and the United States."). Probable cause and particularity are concomitant because "—at least under some circumstances—the lack of a more specific description will make it apparent that there has not been a sufficient showing to the magistrate that the

---

[4] Moreover, the Supreme Court intimated in *Riley* that searching a phone may be akin to searching a defendant's house—if not even more invasive. *Id.* at 396–97 (noting that a "cell phone search would typically expose to the government *far more than the most exhaustive search of a house*" because a phone "not only contains in digital form many sensitive records previously found in the home," but it also "contains a broad array of private information *never found in a home in any form*") (emphases added); *id.* at 403 (comparing general searches of cellphones to the "general warrants and writs of assistance . . . which allowed British officers *to rummage through homes* in an unrestrained search for evidence of criminal activity" against which the Founders fought) (emphasis added).

described items are to be found in a particular place."[5]    WAYNE R. LAFAVE, 2 SEARCH & SEIZURE § 4.5 (6th ed. 2020).

Here, this observation means that the facts as alleged in Trooper Blue's affidavits must raise a "fair probability" or a "substantial chance" that evidence relevant to Morton's crime—that is, simple drug possession— will be found in each place to be searched: his contacts, his call logs, his text messages, and his photographs.  There must be a specific factual basis in the affidavit that connects each cellphone feature to be searched to the drug possession crimes with which Morton was initially charged.

## III.

## A.

The affidavits successfully establish probable cause to search Morton's contacts, call logs, and text messages for evidence of drug possession.  In attesting that probable cause exists, officers may rely on their experience, training, and all the facts available to them.  *Ornelas v. United States*, 517 U.S. 690, 700 (1996); *United States v. Escamilla*, 852 F.3d 474, 481

---

[5] This requirement is especially important in the context of searches of digital devices that contain so much content. *See*, *e.g.*, Adam M. Gershowitz, *The Post-*Riley *Search Warrant: Search Protocols and Particularity in Cell Phone Searches*, 69 VAND. L. REV. 585, 597–600 (2016); *id.* at 609 (noting that in drug cases, warrants frequently "authorize searches for photos and videos [on phones] . . . for which there is typically no probable cause"); Andrew D. Huynh, Note, *What Comes After "Get A Warrant": Balancing Particularity and Practicality in Mobile Device Search Warrants Post-*Riley, 101 CORNELL L. REV. 187, 190 (2015) ("The Court's lengthy discussion about the amount of personal information accessible on a modern mobile device suggests that a search warrant's particularity may be the next subject for scrutiny."); William Clark, *Protecting the Privacies of Digital Life:* Riley v. California*, the Fourth Amendment's Particularity Requirement, and Search Protocols for Cell Phone Search Warrants*, 56 B.C. L. REV. 1981, 1984 (2015) ("As the U.S. Supreme Court held in *Riley*, to allow the police unguided review of the entire contents of a cell phone when executing a search warrant would authorize the exact type of general warrants that the Fourth Amendment forbids.").

(5th Cir. 2017); *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988). Here, Trooper Blue relied on his fourteen years in law enforcement and eight years as a "DRE-Drug Recognition Expert" to assert that suspects' call logs often show calls "arrang[ing] for the illicit receipt and delivery of controlled substances"; stored numbers  identify "suppliers of illicit narcotics"; and text messages "may concern conversations" along these lines as well. Since this is true of drug possession suspects in general, and Morton had been found with drugs, Trooper Blue credibly alleges that there is a "fair probability" that these features of Morton's phone would contain similar evidence of Morton's drug possession charges.

These conclusions are supported by simple logic. To possess drugs, one must have purchased them; contacts, call records, and text messages could all easily harbor proof of this purchase. For example, text messages could show a conversation with a seller haggling over the drugs' cost or arranging a location to meet for the exchange. Similarly, Morton could have had his source of drugs listed in his contacts as "dealer" or some similar name, and recent calls with such a person could show a recent purchase. The affidavit makes all of these points. For this reason, we hold that there was probable cause to search Morton's contacts, call records, and text messages for evidence relating to his illegal drug possession.

**B.**

But the affidavits also asserted probable cause to believe that the photographs on Morton's phones contained evidence of other drug crimes, and on this claim, they fail the test of probable cause as related to the crime of possession. That is, they fall short of raising a "substantial chance" that the photographs on Morton's phones would contain evidence pertinent to his crime of simple drug possession. As we have said, officers are permitted to rely on training and experience when attesting that probable cause exists,

but they must not turn a blind eye to details that *do not* support probable cause for the particular crime. *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (explaining that officers may not "disregard facts tending to dissipate probable cause").

Here, Trooper Blue supplied two facts to provide probable cause to search the images on Morton's phones. First, Morton was found with less than two ounces of marijuana, a pipe, and sixteen pills that Morton stated were ecstasy. Second, based on Trooper Blue's training and experience, "criminals often take photographs of co-conspirators as well as illicit drugs and currency derived from the sale of illicit drugs." This background led Trooper Blue to assert that "*photograph images* stored in the cellular telephone may identify *other co-conspirators and show images of illicit drugs and currency derived from the sale of illicit drugs*." These photographs would, in turn, be evidence of "other criminal activity . . . *in furtherance of narcotics trafficking*" and Morton's drug possession crimes. The search warrant is thus expanded to seek information of an alleged narcotics trafficking conspiracy based solely on Morton's arrest for, and evidence of, simple drug possession.[6]

The syllogism that Trooper Blue offers to gain access to Morton's photographs does not provide adequate grounds for the extensive search. In

---

[6] In full, the sole paragraph in each affidavit purporting to provide probable cause to search Morton's photographs reads:

> Affiant knows through training and experience that photographic images taken on cellular telephones can be stored in the telephones [sic] memory and retained for future viewing. Affiant also knows through training and experience that criminals often take *photographs of co-conspirators as well as illicit drugs and currency derived from the sale of illicit drugs*. Affiant believes that photograph images stored in the cellular telephone may identify *other co-conspirators and show images of illicit drugs and currency derived from the sale of illicit drugs*.

short, the syllogism is (1) Morton was found with personal-use quantities of drugs; and (2) drug dealers often take photos of drugs, cash, and co-conspirators; it therefore follows that (3) the photographs on Morton's phones will provide evidence of Morton's relationship to drug trafficking. The fallacy of this syllogism is that it relies on a premise that cannot be established, namely that Morton was dealing drugs. And here, Trooper Blue disregarded key facts that show that the evidence did not support probable cause that Morton was a drug dealer.

To begin, the quantity of drugs Morton possessed can best be described as personal-use: a single small bag of marijuana and a few ecstasy pills. Further, Morton did not have scales, weapons, or individual plastic bags that are usually associated with those who sell drugs. It is also significant that the officers arrested Morton for possession of marijuana and ecstasy but not distribution of these drugs. *Compare* TEX. HEALTH & SAFETY CODE §§ 481.121, 481.116 *with id.* §§ 481.120, 481.113.[7] In sum, indications of drug trafficking were lacking: no significant amount of drugs; paraphernalia for personal use, not sale; and no large amounts of cash. Or precisely: there was *no* evidence supporting drug trafficking.

Nevertheless, Trooper Blue relied on his knowledge of the behavior of *drug traffickers* to support a search of Morton's photos. Again, we emphasize that the only times Morton's photographs are mentioned in the affidavits are in connection with statements about the behavior of drug traffickers: that "criminals often take photographs of co-conspirators as well

---

[7] *Cf. Moreno v. State*, 195 S.W.3d 321, 325–26 (Tex. App. 2006) (collecting cases showing that proving "delivery" under Texas law requires the consideration of factors including the quantity of contraband possessed, the presence and type of drug paraphernalia, and whether the defendant possessed a large amount of cash); *see also United States v. Le*, 512 F.3d 128, 137 (5th Cir. 2007) (Texas statutory references to "delivery" are equivalent to "possession with intent to distribute").

No. 19-10842

as illicit drugs and currency derived from the sale of illicit drugs," and that "photograph images stored in the cellular telephone may identify other co-conspirators and show images of illicit drugs and currency derived from the sale of illicit drugs." These suggestions relating to the behavior of *drug traffickers* may well be true,[8] but Trooper Blue cannot rely on these assertions to search the photo contents of the cellphones of a suspect charged with simple possession. Nor was Trooper Blue permitted, in his affidavit, to ignore the evidence that negated probable cause as to trafficking.

Since it seems that no evidence supported probable cause to believe that Morton was dealing in drugs, the affidavit leaves us with only the allegations that (1) Morton was found with drugs so (2) it therefore follows that the photographs on Morton's phones will provide evidence of Morton's crime of drug possession. With only this bare factual support that Morton possessed drugs, the affidavits contain nothing to link Morton's marijuana and ecstasy with the photographs on his phones. The affidavits thus do not create a "fair probability" or a "substantial chance" that evidence of the crime of drug possession will be found in the photographs on Morton's cellphones. Therefore, under these facts and based on the specific language in these affidavits, we hold that probable cause was lacking to search Morton's photographs for proof of his illegal drug possession.[9]

---

[8] *See, e.g., United States v. Luna*, 797 F. App'x 158, 160 (5th Cir. 2020) (drug dealers sending photographs of guns, drugs, and cash to each other).

[9] This result is suggested by both our own caselaw as well as the law of other circuits. As Morton argued at oral argument (and the government could not cite a case to the contrary), our precedent is void of any cases in which personal-use quantities of drugs by themselves provide probable cause to search the photos on a defendant's phone. Oral Argument at 41:43, United States v. Morton, No. 19-10842, http://www.ca5.uscourts.gov/OralArgRecordings/19/19-10842_10-5-2020.mp3 ("It still doesn't get you to the images. There's not a single case, based just on training and experience, plus cellphones, plus user-quantity drugs, that you get to get to everything in

No. 19-10842

## C.

Having demonstrated that the warrants to search the photographs stored on Morton's cellphones were not supported by probable cause, we next turn to the question of whether the evidence produced by the search may nevertheless be admitted based upon the good faith exception. To resolve this question, we ask whether the officers' good faith reliance on these defective warrants was objectively reasonable. The district court's decision on the objective reasonableness of an officer's reliance is a question of law that is reviewed de novo. *United States v. Jarman*, 847 F.3d 259, 264

---

the phone."). And a Tenth Circuit decision similarly addresses the issues here: after arresting a defendant for drug crimes, officers applied for and received a warrant to search his computers for files containing "names, telephone numbers, ledger receipts, addresses, and other documentary evidence" of drug offenses. *United States v. Carey*, 172 F.3d 1268, 1270 (10th Cir. 1999). No drug-related evidence was found, but the officer undertaking the search also viewed the defendant's photographs and found child pornography. *Id.* at 1271. The Tenth Circuit reversed the district court, holding that these photographs should be suppressed. *Id.* at 1276.

In rejecting the government's argument that the situation was similar to "an officer having a warrant to search a file cabinet containing many drawers," the panel held that this was "not a case in which the officers had to open each file drawer before discovering its contents." *Id.* at 1274–75. Instead, the government "opened a drawer" marked "photographs" for which they did not have probable cause. *Id.* Subsequent Tenth Circuit cases have upheld the approach that *Carey* established, proscribing those searches with no "limiting principle" while sanctioning those that "affirmatively limit the search to evidence of . . . specific types of material" in the digital setting. *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017); *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005). Other circuits have reached similar results. *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (concluding that a warrant to search a digital device "failed to describe with particularity the evidence sought and, more specifically, to link that evidence to the criminal activity supported by probable cause," resulting in an impermissible "general warrant"); *United States v. Pitts*, 173 F.3d 677 (8th Cir. 1999) (noting in an analogous context outside the realm of digital searches that "when a warrant lists several locations to be searched, a court can suppress evidence recovered at a location in the warrant for which police lacked probable cause but admit evidence recovered at locations for which probable cause was established").

12

(5th Cir. 2017). In reviewing whether an officer's reliance is reasonable under the good faith exception, we ask "whether a reasonably well-trained officer would have known that the search was illegal" despite the magistrate's approval. *United States v. Gant*, 759 F.2d 484, 487–88 (5th Cir. 1985).

The Supreme Court has observed: "[M]any situations which confront officers in the course of executing their duties are more or less ambiguous, [and] room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). And further, "[m]ere affirmance of belief or suspicion is not enough." *Nathanson v. United States*, 290 U.S. 41, 47 (1933). The facts here lead to the sensible conclusion that Morton was a consumer of drugs; the facts do not lead to a sensible conclusion that Morton was a drug dealer. Under these facts, reasonably well-trained officers would have been aware that searching the digital images on Morton's phone—allegedly for drug trafficking-related evidence—was unsupported by probable cause, despite the magistrate's approval. Consequently, the search here does not receive the protection of the good faith exception to the exclusionary rule.

## IV.

However, the good faith exception, applicable to the officers, does not end our analysis. As we have said, if the good faith exception does not save the search, we move to a second step: whether the magistrate who issued the warrant had a "substantial basis" for determining that probable cause to search the cellphones existed. *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010). While the good faith analysis focuses on what an objectively reasonable police officer would have known to be permissible, this second step focuses on the magistrate's decision. The magistrate is permitted to

draw reasonable inferences from the material he receives, and his determination of probable cause is entitled to "great deference" by the reviewing court in all "doubtful or marginal cases." *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987); *see* 2 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 3.1(c) & n.78 (4th ed. 2019). At the same time, "a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis." *United States v. Leon*, 468 U.S. 897, 915 (1984).

Here, even giving the magistrate's determination the deference due, we hold that the magistrate did not have a substantial basis for determining that probable cause existed to extend the search to the photographs on the cellphones. Even if the warrants provided probable cause to search some of the phones' "drawers" or "file cabinets," the photographs "file cabinet" could not be searched because the information in the officer's affidavits supporting a search of the cellphones only related to drug trafficking, not simple possession of drugs. There was thus no substantial basis for the magistrate's conclusion that probable cause existed to search Morton's photographs, and the search is not saved by the magistrate's authority. The search was unconstitutional, not subject to any exceptions, and the evidence must be suppressed as inadmissible.

## V.

Today, we have held that a reasonably well-trained officer would have known that probable cause was lacking to search the photographs stored on the defendant's cellphones for evidence related to drug possession, which was the only crime supporting a search. Moreover, we have held that any additional assertions in the affidavits were too minimal and generalized to provide probable cause for the magistrate to authorize the search of the

photographs.    Because the officers' search of the stored photographs pursuant to the first warrants was impermissible, obviously the use of that information—which was the evidence asserted to secure the second set of warrants—tainted the evidence obtained as a result of that second search, making it the unconstitutional "fruit of the poisonous tree." *See*, *e.g.*, *United States v. Martinez*, 486 F.3d 855, 864 (5th Cir. 2007).    Therefore, the evidence obtained as a result of the second set of warrants is inadmissible.

As we have earlier noted, Morton pled guilty while reserving the right to appeal the district court's order on the motion to suppress.    This conditional guilty plea, under Federal Rule of Criminal Procedure 11(a)(2), allows a defendant to "reserv[e] in writing the right to have an appellate court review an adverse determination of a specific pretrial motion."    FED. R. CRIM. P. 11(a)(2).    Furthermore, "a defendant who prevails on appeal may then withdraw [his] plea."    *Id.*    Therefore, as to the photographs discovered in the first search of Morton's cellphones and the subsequently discovered evidence from the second searches, we REVERSE the order of the district court denying Morton's motion to suppress, VACATE Morton's conviction and sentence so that he may withdraw his plea, and REMAND this case to the district court for further proceedings not inconsistent with this opinion.

REVERSED, VACATED, and REMANDED.