# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 22, 2022

Lyle W. Cayce
Clerk

No. 19-10842

United States of America,

*Plaintiff—Appellee*,

*versus*

Brian Matthew Morton,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-17-1

Before Richman, *Chief Judge*, and Jolly, Jones, Smith, Stewart, Dennis, Elrod, Southwick, Haynes, Graves, Higginson, Costa, Willett, Ho, Duncan, Engelhardt, Oldham and Wilson, *Circuit Judges*.[*]

Gregg Costa, *Circuit Judge*, joined by Richman, *Chief Judge*, and Jones, Smith, Stewart, Southwick, Haynes, Ho, Duncan, Engelhardt, Oldham, and Wilson, *Circuit Judges*:

State troopers arrested Brian Morton after finding drugs in his car during a traffic stop. Morton also had three cellphones in the car. A state

---

[*] Judge Jolly chooses not to dissent or to join Judge Graves's dissent. He chooses to stand by the initial panel opinion.

judge later signed warrants authorizing searches of the phones for evidence of drug crime. The warrants allowed law enforcement to look at photos on the phones. When doing so, troopers discovered photos that appeared to be child pornography. This discovery led to a second set of search warrants. The ensuing forensic examination of the phones revealed almost 20,000 images of child pornography. This federal prosecution for receipt of child pornography followed.

Even though search warrants authorized everything law enforcement did when searching the cell phones, Morton argues the evidence discovered during those searches should be suppressed. We disagree because law enforcement is usually entitled to rely on warrants, and none of the exceptions that undermine good-faith reliance on a judge's authorization applies.

I

Shortly after midnight, state trooper Burt Blue pulled over Morton's van on Interstate 20 about fifty miles west of Fort Worth. After approaching the driver's side door, Blue smelled marijuana. Morton eventually admitted he had marijuana in the van. Blue then searched Morton and found an Advil bottle in his right pocket. The bottle contained several different colored pills that Morton admitted were ecstasy. Morton was arrested.

Blue and another trooper searched the van. Inside a plastic container wrapped in tape they discovered two plastic bags, one of which contained a small amount of marijuana. They also found a glass pipe with marijuana. In addition to the drug evidence, the troopers discovered approximately 100 pairs of women's underwear, a number of sex toys, and lubricant. A backpack with children's school supplies was also inside the van. A lollipop was inside a cupholder. Based on what they found in the van, the troopers were concerned Morton was a sexual predator.

No. 19-10842

The troopers also seized three cellphones during the search of the van. A few days after Morton's arrest, Blue applied for search warrants for the three phones. The search warrants sought evidence of drug possession and dealing.

In the affidavits he submitted in support of the warrants, Blue recounted the traffic stop and the drug evidence discovered in the van and on Morton. He also explained why, based on his experience, he believed it likely that the cellphones contained evidence of illegal drug activity. People often communicate via cellphone to arrange drug transactions. And "criminals often take photographs of co-conspirators as well as illicit drugs and currency derived from the sale of illicit drugs."

A state district judge concluded that probable cause existed for the searches and signed the three warrants. Each warrant allowed troopers to search for various items on the phones including "photographs, digital images, or multimedia files in furtherance of narcotics trafficking or possession."

While searching the phones, Blue and a Department of Public Safety agent saw images they believed were child pornography. They stopped searching and sought new warrants seeking evidence of child pornography. The same state district judge issued the new warrants. The forensic search of the phones that followed located 19,270 images of child pornography on the three phones.

A federal grand jury charged Morton with receipt of child pornography. Morton moved to suppress the pornographic images found on the phones. He argued that probable cause did not support the initial warrants allowing the phone searches. The good-faith doctrine did not apply, he continued, because the affidavits were too "general in nature" to tie the phones to drug activity. He also briefly contended that the search of the

3

phone for drug evidence was pretextual because the troopers were really concerned that Morton might have committed sex crimes.

The district court refused to suppress the evidence. It concluded that the good-faith exception to the suppression rule applied.

After losing his suppression motion, Morton entered a conditional guilty plea that allowed him to challenge the searches on appeal.

Morton's appeal initially succeeded. A panel of our court concluded that, although the "affidavits successfully establish probable cause to search Morton's contacts, call logs, and text messages for evidence of drug possession," *United States v. Morton*, 984 F.3d 421, 427 (5th Cir. 2021), they do not establish probable cause "that the photographs on Morton's phones would contain evidence pertinent to [that] crime," *id*. at 428. The panel also held that the good-faith exception did not apply because reasonable officers should "have been aware that searching the digital images on Morton's phone—allegedly for drug-trafficking-related evidence—was unsupported by probable cause." *Id*. at 430.

Our full court vacated that decision and agreed to hear this case en banc. *See United States v. Morton*, 996 F.3d 754 (5th Cir. 2021).

II

*Riley v. California*, one of the recent Supreme Court cases applying the Fourth Amendment to modern technology, held that the search of a cellphone incident to arrest requires a warrant. 574 U.S. 373 (2014). Morton and supporting amici view this case as a follow-on that allows us to flesh out when probable cause exists to believe that certain applications on a cellphone contain incriminating evidence. They argue that *Riley*'s warrant requirement will be a mere formality if officers can search an entire phone based on

nothing more than the fact that criminals sometimes use phones to conduct their illicit activity.

Despite the invitation to treat this as another difficult case addressing how "the degree of privacy secured to citizens by the Fourth Amendment" is affected "by the advance of modern technology," *Kyllo v. United States*, 533 U.S. 27, 33–34 (2001), a longstanding rule resolves the case: Evidence should not be suppressed when law enforcement obtained it in good-faith reliance on a warrant. *See United States v. Leon*, 468 U.S. 897 (1984).[1]

The good-faith rule flows from two central features of modern Fourth Amendment jurisprudence: the warrant requirement and the suppression remedy. The Supreme Court has held that a warrant is generally required for certain searches, most notably searches of the home and most recently searches of cellphones incident to arrest. *See Riley*, 574 U.S. at 403; *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (noting that "searches and seizures inside a home without a warrant are presumptively unreasonable" (internal quotation omitted)). Behind the warrant requirement is the idea that the "inferences which reasonable men draw from evidence" to decide if probable cause exists should "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948) (Jackson, J.). Although obtaining a warrant from that neutral judge may

---

[1] We recognize that it will "stunt the development of Fourth Amendment law" if courts too often avoid the underlying constitutional question and deny suppression motions based on the good-faith rule. *See Davis v. United* States, 564 U.S. 229, 245–46 (2011) (summarizing this argument the defendant advanced); *cf. Pearson v. Callahan*, 555 U.S. 223 236 (2009) (giving courts discretion to rule only on the "clearly established" inquiry for qualified immunity but recognizing that deciding the underlying constitutional question is "often beneficial"). In this instance, however, we conclude that the good-faith rule offers the most appropriate resolution by the full court.

No. 19-10842

burden law enforcement before it conducts the search, the police obtain a benefit after the search. When a court reviews an after-the-fact challenge to the search, "the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). As a result, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Leon*, 468 U.S. at 922 (quoting *Illinois v. Gates*, 462 U.S. 213, 267 (1983) (White, J., concurring in judgment)).

To this unwillingness to second guess the magistrate who authorized the warrant, the exclusionary rule adds another component. As a judicially-created remedy rather than a constitutional requirement, the exclusionary rule is justified by the deterrent effect of suppressing evidence when it was obtained unlawfully. *Id.* at 906. A key consideration in deciding when suppression will deter is whether "law enforcement officers have acted in objective good faith." *Id.* at 908. The need to punish police conduct and thus deter future violations via suppression "assumes that the police have engaged in willful, or at the very least negligent, conduct." *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)). The exclusionary rule is not aimed at "punish[ing] the errors of judges and magistrates" who issue warrants. *Id.* at 916.

Deference to the judge issuing the warrant and the exclusionary rule's focus on deterring police misconduct results in the good-faith exception to the suppression remedy: A "'warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting a search.'" *Id.* at 922 (quoting *United States v. Ross*, 456 U.S. 798, 832 n.32 (1982)).

Normally, but not always. The Supreme Court identified four situations when "a reasonably well trained officer would have known that the

No. 19-10842

search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. Reliance on a warrant is unreasonable when: 1) the magistrate issued it based on information the affiant knew was false or should have known was false but for reckless disregard of the truth; 2) the magistrate wholly abandoned the judicial role; 3) the warrant is based on an affidavit so lacking in probable cause as to render belief in its existence unreasonable; and 4) the warrant is facially deficient in particularizing the place to be searched or things to be seized. *Id.* at 923; *see also United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012).

III

Morton principally tries to defeat good faith by invoking the third exception, which involves what are commonly known as "bare bones" affidavits.[2] "'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

---

[2] Morton also invokes the first exception that applies when law enforcement misleads the magistrate with false information in the affidavit. We succinctly address this argument because the full court is unanimous in rejecting it and Morton may not have adequately raised it in district court.

The alleged falsehood is keeping from the magistrate that the affiant's motive was not obtaining evidence of drug crime but investigating suspicions that Morton was a sexual predator. In other words, Morton is arguing that the reason for obtaining the warrant was pretextual. Even if Morton could prove this motive, it would not matter. The Supreme Court has repeatedly held that the Fourth Amendment inquiry, including the existence of probable cause, is objective. *See, e.g., Brigham City*, 547 U.S. at 404–05 (2006); *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also United States v. McKinnon*, 681 F.3d 203, 210 (5th Cir. 2012) (explaining that the officer's motive in searching a vehicle did not matter). It is telling that Morton's primary authority on this issue is a vacated opinion. *See United States v. Pope*, 452 F.3d 338, *vacated by* 467 F.3d 912 (5th Cir. 2006).

A look at some bare-bones affidavits from Supreme Court cases shows just how bare they are.  One affidavit, from the Prohibition Era, said nothing more than that the agent "has cause to suspect and does believe that certain merchandise . . . has otherwise been brought into the United States contrary to law, and that said merchandise is now deposited and contained within" the defendant's home.  *Nathanson v. United States*, 290 U.S. 41, 44 (1933).  Another affidavit, this one supporting an arrest warrant, said only that, on a certain day, the defendant "did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation" and that the affiant "believes" certain people "are material witnesses in relation to this charge."  *Giordenello v. United States*, 357 U.S. 480, 481 (1958).  Similarly, the allegations supporting an arrest warrant were bare bones when the only information was that "defendants did then and there unlawfully break and enter a locked and sealed building."  *Whiteley v. Warden*, 401 U.S. 560, 563 (1971).  Lastly, Houston police officers obtained a search warrant based only on their statement that they "received reliable information from a credible person and do believe that [drugs] are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."  *Aguilar v. Texas*, 378 U.S. 108, 109 (1964).  These affidavits do not detail any facts, they allege only conclusions.

Also consider affidavits we have found to be bare-boned.  In what we described as a "textbook example of a facially invalid, 'barebones' affidavit," the officer listed just the defendant's "biographical and contact information" and then stated "nothing more than the charged offense, accompanied by a conclusory statement" that the defendant committed that crime.  *Spencer v. Staton*, 489 F.3d 658, 661–62 (5th Cir. 2007), *withdrawn in part on reh'g* (July 26, 2007).  In another case, an officer obtained a warrant to search a motel room based on an affidavit stating nothing more than that the officer "received information from a confidential informant" who was known to him

and who had "provided information in the past that ha[d] led to arrest and convictions." *United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986). As these cases illustrate, bare-bones affidavits contain "wholly conclusory" statements such as "the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe.'" *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (internal quotations omitted).

The affidavits used to search Morton's phones are not of this genre; they have some meat on the bones. Each is over three pages and fully details the facts surrounding Morton's arrest and the discovery of drugs and his phones. They explain where the marijuana and glass pipe were discovered, the number (16) and location of the ecstasy pills, and the affiant's knowledge that cellphones are used for receipt and delivery of illegal narcotics. In support of the request to search for photos on the phones, the affiant explains he "knows through training and experience that criminals often take photographs of co-conspirators as well as illicit drugs and currency derived the sale of illicit drugs." Whatever one might conclude in hindsight about the strength of the evidence it recounts, the affidavit is not "wholly conclusory." *Satterwhite*, 980 F.2d at 321.

The affidavits, then, put all the relevant "facts and circumstances" before the state judge, allowing him to "independently determine" if the notoriously fuzzy probable-cause standard had been met. *See id.*; *see also Gates*, 462 U.S. at 232 ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."). In other words, the judge made a judgment call. Judgment calls in close cases are precisely when the good-faith rule prevents suppression based on after-the-fact reassessment of a probable-cause determination. *Leon*, 468 U.S. at 914 ("Reasonable minds frequently may differ on the question whether a particular affidavit

establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969))).

Although he invokes the bare-bones exception, Morton does not confront the caselaw showing it applies to affidavits that are wholly conclusory. He instead mostly challenges the probable-cause determination assessment itself, contending that the facts "merely establish[ed] probable cause for a user-quantity drug possession arrest and not probable cause to search the entire communication and photographic contents of [his] phones." Drug possessors, he points out, are less likely to use phones for drug activity than are dealers. He contends it would gut *Riley* if the linking of criminal activity to cellphones can be based on nothing more than an officer's experience that certain offenders often use cellphones in connection with their crimes. But this is not such a case. Morton had multiple phones in his car along with the drugs, which our court and others have recognized can indicate that the phones are being used for criminal activity.[3] *See United States v. Bams*, 858 F.3d 937, 945 (5th Cir. 2017); *United States v. Lindsay*, 3 F.4th 32, 40 (1st Cir. 2021); *United States v. Peterson*, 2019 WL 1793138, at *11–12 (E.D. Va. Apr. 24, 2019); *see also United States v. Eggerson*, 999 F.3d 1121, 1127 (8th Cir. 2021) ("It would be unreasonable and impractical to demand that judges evaluating probable cause must turn a blind eye to the virtual certainty that drug dealers use cell phones.").

---

[3] The concurring opinion points out that the affidavits did not identify the existence of three phones as a reason why the troopers suspected Morton of dealing drugs. But together the affidavits placed the fact of Morton's multiple phones before the state judge, who is charged with making an objective evaluation of probable cause.

No. 19-10842

It is a close call whether the evidence recounted in the affidavits established probable cause for drug trafficking as opposed to drug possession. And if the evidence indicated only possession, then it is another close call whether there was probable cause to believe that evidence of drug possession would be found on the phones. But as we have emphasized, on close calls second guessing the issuing judge is not a basis for excluding evidence.

Viewed in their entirety, the affidavits supporting the warrants are far from bare bones. It thus was reasonable to rely on the warrants and search the phones.

For most of this case, Morton's argument was the one we have just addressed: that searching any part of his phones was unjustified because the affidavits establish probable cause only for drug possession and not the trafficking that is more logically tied to phones. But even the panel originally hearing this appeal did not accept that argument despite holding that the photos should have been suppressed. The panel recognized probable cause existed to "search Morton's contacts, call logs, and text messages" on his phone, just not the photos. 984 F.3d at 427–28; *id.* at 431 (concluding that "the magistrate did not have a substantial basis for determining that probable cause existed to extend the search to the photographs on the cellphones"). Morton now runs with this theory that good-faith should be "analyzed separately" for each area to be searched. Because he did not make this claim in the district court or in his original appellate brief, it is forfeited, and we are not deciding it.

Even if we could consider Morton's new argument advocating a piecemeal analysis, it would not change our holding that the good-faith rule applies. At least one other court has taken the approach of the original panel in this case and analyzed whether an affidavit is bare bones for particular items to be searched. *See Burns v. United States*, 235 A.3d 758, 774 (D.C.

2020) ("The affidavits were thus classic 'bare bones' statements as to everything on Mr. Burns's phones for which Detective Littlejohn made a claim of probable cause beyond three narrow categories of data for which the affidavits made proper factual showings."). Our precedent takes a different approach. When a defendant moved to suppress evidence obtained under a warrant that authorized the seizure of "twenty-six categories of evidence, primarily written and electronic documents," our good-faith inquiry did not parse probable cause for each category. *See United States v. Cherna*, 184 F.3d 403, 406 (5th Cir. 1999). We instead focused on whether the affidavit as a whole was bare bones, while "keep[ing] in mind that it is more difficult to demonstrate probable cause for an 'all records' search of a residence than for other searches." *Id.* at 409. That is, the scope of a warrant may influence whether it is bare bones. An affidavit that is not bare bones for a limited search could be bare when supporting a broader search. Keeping the focus on the entirety of the affidavit as *Cherna* does is the traditional bare-bones inquiry, *see, e.g, Leon*, 468 U.S. at 926 (referring to a "'bare bones' affidavit" not parts of an affidavit), and consistent with the ultimate question whether an officer would know the affidavit is "so lacking in probable cause as to render belief in its existence unreasonable" despite a judge's finding that probable cause existed, *id.* at 923.

Viewing the entire affidavit against the broad phone search it authorized, it is borderline rather than bare bones. And even if our caselaw allowed a photographs-only inquiry and Morton preserved that argument, we would still not characterize the evidence supporting that request as "wholly conclusory." *Cf. United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009) (recognizing that it was reasonable to search a computer for "trophy photos" of drug activity based on not much more evidence than exists here).

The officers relied in good faith on the warrants the state judge issued. On finding images that appeared to be child pornography, they went back to

No. 19-10842

the judge for additional warrants (Morton does not challenge how the searches were conducted).   We see no unreasonable law enforcement conduct that warrants suppression of the evidence the searches discovered.

\* \* \*

We do not decide if the state judge should have authorized full searches of the phones based on these affidavits.  We decide only that the officers acted in good faith when relying on the judge's decision to issue the warrants.  This ruling hardly nullifies *Riley* as Morton, amici, and the dissent suggest.  Before *Riley*, police could have searched Morton's phones on the spot after arresting him.  *See United States v. Finley*, 477 F.3d 250, 259–60 (5th Cir. 2007), *overruled by Riley*, 573 U.S. at 373.  Because of *Riley*, the officers had to obtain warrants.  For better or worse, the warrant requirement and good-faith rule make the judge presented with the warrant application the central guardian of Fourth Amendment rights.[4]  That has long been true when officers seek to search a home; *Riley* makes it true for searches of cellphones incident to arrest.

The judgment is AFFIRMED.

---

[4] The role of the judge who must authorize a warrant is absent from the dissent's recounting of how officers might be able to search cellphones after "find[ing] evidence of small quantities of illicit drugs for personal use during an automobile stop."  Dissenting Op. 4–5.

13

No. 19-10842

Stephen A. Higginson, *Circuit Judge*, with whom Elrod and Willett, *Circuit Judges*, join, and with whom Ho and Wilson, *Circuit Judges*, join as to Part II, concurring in the judgment:

I agree with the majority that the affidavit supporting the warrants in this case was "borderline rather than bare bones," and, therefore, that the good faith exception applies. *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

I.

Because we can decide this case on the good faith exception, the majority opinion appropriately declines to address whether there was probable cause to search Morton's cell phone. I write separately to address the majority's response to Morton's argument that a finding of probable cause here would conflict with the reasoning, though not necessarily the holding, of *Riley v. California*, 573 U.S. 373 (2014), in which the Supreme Court held that police officers must obtain a warrant before searching the contents of an arrestee's cell phone, rather than conducting a search of the cell phone incident to arrest.

The only facts in the affidavit to support probable cause for a search of Morton's cell phone were that: (1) he possessed a user-quantity of drugs, (2) he simultaneously possessed a cell phone, and (3) the officer "kn[ew] through training and experience" that individuals, including those possessing illicit drugs, use their cell phones to communicate. If these three facts are sufficient to support probable cause for the search here, then any time an officer finds drugs (or other contraband for that matter) on a person or in a vehicle, there is probable cause to search the *entire contents* of a nearby cell phone.

Of course, *Riley* requires that officers first get a warrant, 573 U.S. at 403, but if the fact that the arrestee was carrying a cell phone at the time of

arrest is sufficient to support probable cause for a search, then the warrant requirement is merely a paperwork requirement. It cannot be that *Riley*'s holding is so hollow.[1]

## II.

The heightened privacy interest that *Riley* recognized an arrestee has in the contents of their cell phone stems in part from the quantitative and qualitative differences between the data stored on a cell phone and any "other objects that might be kept on an arrestee's person." *Id.* at 393. Cell phones contain an enormous amount of personal information dating back months or years, including data that has no physical equivalent, like browser history or geolocation information. *Id.* at 394-96. Therein lies the problem with a cell phone search premised solely on the simultaneous possession of drugs and a phone. It is not merely the lack of probable cause that evidence of drug possession or trafficking would be found on the phone, but also that with such a meager showing, officers would gain unfettered access to all of "the privacies of life." *Id.* at 403 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

The original panel opinion in this case presented one potential solution to this problem by requiring probable cause for each category of data to be searched. *United States v. Morton*, 984 F.3d 421, 425-26 (5th Cir. 2021). This approach runs into practical problems, including the fact that

---

[1] The majority's response to the contention that "it would gut *Riley* if the linking of criminal activity to cellphones can be based on nothing more than an officer's experience that certain offenders often use cellphones in connection with their crimes" is that, here, there was something more—namely, the presence of multiple cellphones. It is true that we have recognized that the presence of multiple phones in a car—when combined with other strong evidence—can support a conviction for drug trafficking, *United States v. Bams*, 858 F.3d 937, 945 (5th Cir. 2017). But the affidavits here did not mention that multiple phones were found in the car, let alone rely on that fact to support probable cause.

"criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity." *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011).

Another approach, proposed by a leading Fourth Amendment scholar, would impose "use restrictions" on data that is outside the scope of the warrant, possibly by limiting application of the plain view doctrine in the context of digital searches. *See* Orin S. Kerr, *Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data*, 48 Tex. Tech L. Rev. 1, 9, 19-20 (2015). At least one state supreme court has adopted a use restriction approach, *see State v. Mansor*, 421 P.3d 323, 344 (Or. 2018), and another has suggested that it might do so in the future, *Preventative Med. Assocs. v. Commonwealth*, 992 N.E.2d 257, 274 (Mass. 2013). After *Riley* and *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018), in which the Supreme Court held that the third-party doctrine does not apply to cell-site location information, it would be unsurprising if the Court, again acknowledging the need to adapt rules constructed for the physical world to the reality of the digital world, recognized an exception to another longstanding Fourth Amendment doctrine, this time plain view. *See* Kerr, *supra*, at 20; *see generally Kyllo v. United States*, 533 U.S. 27, 33-34 (2001).

And there may be still other solutions that have yet to be identified. State courts face these dilemmas much more often than we do, and their continued innovation in this area—along with the valuable insights of Fourth Amendment scholars and those with the necessary technological expertise—will undoubtedly aid the lower federal courts and the Supreme Court in reaching a solution that protects privacy and the Framers' conception of reasonableness. To my eye, that conception is unlikely to approve plain view full access to, and use of, what the Supreme Court has observed is more private information than would be contained in an entire home, where plain view access has obvious and significant limits. *Riley*, 573 U.S. at 396-97.

No. 19-10842

James E. Graves, Jr., *Circuit Judge*, joined by Dennis, *Circuit Judge*, dissenting:

Despite cautionary case law from this court that we "should resist the temptation to frequently rest [our] Fourth Amendment decisions on the safe haven of the good-faith exception, lest [we] fail to give law enforcement and the public the guidance needed to regulate their frequent interactions," the majority avoids dealing with the "close call" question of probable cause. *United States v. Molina-Isidoro*, 884 F.3d 287, 293 (5th Cir. 2018) (Costa, J., specially concurring). We should not fall into this "inflexible practice" that the Supreme Court warned against in *Leon* "of always deciding whether the officers' conduct manifested objective good faith before turning to the question whether the Fourth Amendment has been violated." *United States v. Leon,* 468 U.S. 897, 923 (1984). In failing to analyze this case for probable cause, the majority condones the government's extensive and intrusive search of cell phones and its failure to provide any explanation of how those particular phones relate to the charged crime. In essence, it insulates officers from having to connect the dots between their general knowledge and experience—as detailed in a probable cause affidavit—and the basis for that specific search warrant. *See United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (disavowing affidavits based on an officer's general suspicions or beliefs as "bare bones"). I dissent.

First, this case must be viewed against the proper backdrop. Searching a cellphone is much more invasive than a self-contained search of a pocket, compartment, or bag. As Learned Hand noted, it is "a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." *Riley v. California*, 573 U.S. 373, 396 (2014) (citation omitted). "A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in

17

any form—unless the phone is." *Id.* at 396-97. Here, law enforcement conducted a traffic stop that produced evidence of a marginal offense. Then, they used this evidence as an excuse to gain unfettered access to a device saturated with personal, private information.

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). We require a "nexus between the [place] to be searched and the evidence sought." *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) (collecting cases). Here, Morton was charged with simple possession based on 16 ecstasy pills, a small bag of marijuana, and a glass pipe. Trooper Blue's affidavit stated that he believed Morton's phones contained evidence of possession of ecstasy and marijuana "and other criminal activity." Notably, Trooper Blue's affidavit indicates that he already had firsthand evidence of Morton's possession offense. One, he found the drugs on Morton. And two, Morton "admitted to . . . the possession of marijuana and [e]cstasy." Morton did not have a large quantity of drugs, a large sum of cash, or anything else that would have indicated he was anything more than an admitted drug possessor, not a drug dealer.

However, in an attempt to gain access to Morton's phones, Trooper Blue made sweeping generalizations about "other criminal activity" and cell phone use, yet not once did he mention why such evidence could or would be on Morton's phone. Nor did he connect his suspicions to Morton's simple possession offense. Not even in passing. He instead hinged his affidavit on general conclusions about cellphones and criminals. As the Supreme Court has noted, "[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Riley*, 573 U.S. at 399. However, such speculation cannot be used to allow "police officers unbridled discretion to rummage at will among a person's private

18

effects." *Id.* (citation omitted). Trooper Blue's generalizations lack a nexus to the crime of simple possession, and there was no probable cause for the warrant to issue.

For this same reason, the good faith exception does not apply. This court has repeatedly held that a nexus is necessary to claim the protection of the good faith exception. *See, e.g., United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994) (noting in the discussion on the officer's good faith reliance that "[t]he affidavit must tend to show some nexus between the [area] to be searched and the evidence sought."); *United States v. Brown*, 567 F. App'x 272, 284 (5th Cir. 2014) (unpublished) (including the lack of nexus "between [defendant's] trafficking activities and his residence" among the deficiencies in the warrant's supporting affidavit); *United States v. Triplett*, 684 F.3d 500, 506–07 (5th Cir. 2012); *United States v. Fields*, 72 F.3d 1200, 1214 (5th Cir. 1996); *United States v. Gant*, 759 F.2d 484, 488 (5th Cir. 1985); *cf. Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) (indicating in the context of a seizure of "mere evidence" that "[t]here must, of course, be a nexus . . . between the item to be seized and criminal behavior.").

Where the affiant claims—without explaining *why*—he "has cause to suspect and does believe" or—without explaining *how*—he "[has] received reliable information from a credible person and [does] believe" that the search will result in the discovery of illegal activity, we deem such affidavits "bare bones." *Pope*, 467 F.3d at 920 (internal quotations omitted). And the root issue with "bare bones" affidavits is that they do not explain how or why the affiant's attested knowledge and the specific facts connect.

Under *Leon*, the Supreme Court noted that the critical inquiry in this analysis is whether the affidavit "provide[s] evidence sufficient to"—at a minimum—"create disagreement among thoughtful and competent judges as to the existence of probable cause." 468 U.S. at 926; *see also U.S. v. Bosyk,*

933 F.3d 319, 333 (4th Cir. 2019); *U.S. v. Davis*, 530 F.3d 1069, 1083 n.3 (9th Cir. 2008); *U.S. v. Luong,* 470 F.3d 898, 903 (9th Cir. 2006). Cramming facts into a supporting affidavit does not make reliance on the resulting warrant more objectively reasonable *unless* those facts are probative as to probable cause. But the majority departs from this approach and exalts quantity over quality. For instance, the majority lauds the fact that the supporting affidavit in this case was "over three pages" long; specified the locations where the marijuana, ecstasy, and glass pipe were found; and stated the quantity of ecstasy pills recovered (namely, sixteen). *Ante,* at 9. But the search of Defendant's phone was justified only on the basis that people who *sell* drugs, and other "criminals," might have inculpatory photographs on their phones. And none of these facts indicate that Morton *sold* drugs or otherwise possessed them for anything other than personal use.

In short, Trooper Blue makes sweeping generalizations about criminal activity and cell phone use, yet not once does he mention why such evidence could or would be on Morton's phone or how it relates to simple possession. No reasonable officer could have perceived the facts alleged in the supporting affidavit to be "indicia of probable cause" to support a search of Defendant's phone. *Leon*, 468 U.S. at 923.

Lastly, I fear that the incentive for law enforcement to imitate Trooper Blue's conduct in this case will be both strong and widespread. It is routine for officers to find evidence of small quantities of illicit drugs for personal use during an automobile stop. If the officer then wishes to gain access to such person's phone—and, with it, "[t]he sum of [his or her] private life," *Riley*, 573 U.S. at 394—the majority's approach imposes virtually no costs against doing so. All the officer needs to do is state what drugs they found, where they found it, and provide boilerplate language about how "cellphones are used for receipt and delivery of illegal narcotics." *Ante,* at 9. The officer can

then take refuge in the majority's holding that he is protected by the good faith exception. This is unjust, unfair, and unconstitutional.

I respectfully dissent.